Kay Stanton PAYNE, Plaintiff,

v.

Daniel M. HOWARD et al., Defendants.

Civ. A. No. 75–1717.

United States District Court,
District of Columbia.

May 26, 1977.

Allen T. Eaton, Eaton, Stein & Efroymson, Washington, D.C., for plaintiff.

Laidler B. Mackall, Randolph J. May, Steptoe & Johnson, Washington, D.C., for Daniel M. Howard.

## MEMORANDUM OPINION

SIRICA, District Judge.

### I. BACKGROUND

This is a bitterly contested malpractice action in which plaintiff, Kay Stanton Payne, seeks to recover damages from Dr. Daniel M. Howard and Greater Southeast Community Hospital. The complaint basically alleges that Dr. Howard performed a sagittal split osteotomy on plaintiff in a negligent manner and without her informed consent. The complaint also alleges that the Hospital was negligent by failing to provide sterile facilities and capable personnel to care for plaintiff after the surgery was performed. Both defendants deny any wrongdoing in connection with the professional care and treatment plaintiff received.

Suit was instituted on October 17, 1975, approximately a year after plaintiff received treatment from defendants. Since then, the parties have undertaken extensive efforts at discovery, and out of these efforts the present controversy has arisen between plaintiff and defendant Howard. This dispute arose when plaintiff took the deposition of defendant Howard on November 1, 1976. In the notice of deposition, defendant was requested to produce a number of documents relating to his dental practice as well as to his private affairs. Defendant Howard did produce, or agreed to produce, for inspection and copying, much of the requested information. But he refused to produce other requested documents and to answer certain questions on the grounds that the information being sought was either irrelevant or privileged, or both.

These refusals prompted plaintiff to move the Court for an order entering a default judgment against defendant, or in the alternative, compelling him to make the requested discovery and imposing costs pursuant to F.R.Civ.P. 37(a)(4). Defendant Howard opposed this motion and cross-moved for an award of costs on the grounds that plaintiff's motion to compel was not substantially justified within the meaning of Rule 37(a)(4). In addition, defendant Howard moved for an order striking parts of plaintiff's motion as immaterial, impertinent and scandalous. In this tangled posture, the case awaits judicial intervention. For the reasons that follow, the Court holds (A) that defendant Howard is entitled to an order striking certain portions of plaintiff's motion, (B) that plaintiff's motion to compel discovery should be granted in part and denied in part and (C) that neither party is entitled to an award of costs; nor is plaintiff entitled to entry of a default judgment.

### II. DISCUSSION

A. *F.R.Civ.P. 11 Entitles Defendant Howard to an Order Striking those Portions of Plaintiff's Motion that Insinuate Comparisons Between Defendant and a Reputed Medical Malpractitioner not a Party Herein.*

The authority to strike pleadings stems from provisions of the Federal Rules of Civil Procedure. F.R.Civ.P. 11 confers on the Court the power to order pleadings stricken "if scandalous or indecent matter is inserted." *Id.* Similarly, F.R.Civ.P. 12(f) provides that upon motion by a party "the court may order stricken from any pleading" any material that is "redundant, immaterial, impertinent or scandalous." *Id.* Although rules 11 and 12(f) refer to "pleadings," at least rule 11 affords a basis for striking material other than formal "pleadings." *See* F.R.Civ.P. 7(b)(2); *Wright & Miller, Federal Practice and Procedure* § 1191 (1969); *Moore, Federal Practice*

¶ 11.02 (1975). Whether that authority is to be exercised is a matter committed to the discretion of the Court.

█ Throughout the papers filed in support of her motion to compel discovery, plaintiff repeatedly likens defendant Howard to a notorious medical practitioner whose malpractice is chronicled in an article from *New Times* magazine entitled, "Meet Dr. Nork, America's Leading Malpractitioner." A copy of this article was attached to plaintiff's motion. In it, Dr. Nork is described as "perhaps the worst physician ever to practice medicine in the United States." Dr. Nork's professional misconduct is detailed as having run the gamut from self-prescribing amphetamines, to performing wholly unnecessary surgical procedures, to falsifying medical records. According to the article, Dr. Nork's practice has spawned a virtual industry of malpractice claims in the California community where he resided, producing judgments against him amounting to many millions of dollars.

Plaintiff has attempted to justify the attachment of this article to the record of the instant case by asserting that the article about Dr. Nork points out how a malpractitioner can escape detection until after he has proved to be a menace to society. Plaintiff zealously insinuates that the professional misconduct of defendant Howard has similarly escaped detection in this community. In the Court's view, however, this attempt to draw parallels misconstrues the purpose of this lawsuit. Plaintiff is a private litigant seeking to recover damages on account of injuries she allegedly sustained during and after she underwent surgery in 1974. She is not a prosecutor duly charged with bringing persons to task for alleged misdeeds. Nor is she justified in assuming the role of a public or quasi-public authority whose function is to regulate the practice of medicine. Her role is simply as an adversary, meaning that she must confine her efforts, in the context of this case, to discovering relevant information and using it to prove the particular tortious acts of which she has complained.

By overstepping her limited role, and insinuating comparisons between defendant Howard and a reputed "Rogue Elephant" type of health care provider, plaintiff has gone far towards focusing the Court's attention on matters that are wholly outside the scope of this case. Whether the article about Dr. Nork is accurate or not, it simply has no bearing, in the Court's estimation, on any material issue involved in the present proceeding. Moreover, references to it for the purpose of drawing comparisons with defendant Howard improperly cast him in a derogatory light. *Cf. Wright & Miller, supra* § 1382. It belabors the obvious to say that these references qualify as "indecent" and "scandalous" within the meaning of F.R.Civ.P. 11, and for this reason, they must be stricken.

B. *Defendant Howard's Refusal to Make Discovery as Requested by Plaintiff was in Part Justified.*[1]

1. *pleadings in other lawsuits filed against defendant Howard*

In the notice of deposition, plaintiff requested defendant Howard to produce copies of pleadings filed in malpractice suits in which he is a party defendant. On the advice of counsel, defendant Howard refused to produce the requested items, but nevertheless provided plaintiff with the caption and docket number of the single case where he is named a defendant.[2]

---

1. Plaintiff has sought to compel the discovery of numerous items, some of which raise substantial legal questions, others of which present largely routine issues. In the discussion that follows, the Court will consider at length only those items of discovery that are subject to substantial legal dispute. The Court will summarily dispose of the remaining items in an order issued of even date herewith.

2. Subsequent to the November 1, 1976 deposition, defendant Howard was named as a party defendant in a second malpractice action. Counsel has provided plaintiff with the caption and docket number of this action. This case, like the first suit brought against defendant, was commenced in the Superior Court of the District of Columbia.

Plaintiff contends that this response was inadequate.

■ The threshold question here is relevance.[3] Although relevance in the context of discovery is decidedly broader than in the context of admissible evidence, it is not without limits. Parties to a lawsuit are only entitled to discover information that "appears reasonably calculated to lead to the discovery of admissible evidence." F.R. Civ.P. 26(b)(1). Whether pleadings in one suit are "reasonably calculated" to lead to admissible evidence in another suit is far from clear. F.R.Evid. 401, 406. In the Court's view, discovery of this type of information typically will *not* lead to admissible evidence. *Id.* But that determination depends on the nature of the claims, the time when the critical events in each case took place, and the precise involvement of the parties, among other considerations. To date, there has been no inquiry into how— let alone a showing that—the pleadings sought by plaintiff are related to any of the issues raised in the instant case. Given that fact, and given also the unlikelihood that an adequate proffer could be made, the Court must conclude that the items sought are not "reasonably calculated" to lead to the discovery of admissible evidence. Of course, this situation would have been different if plaintiff had preceded her request with discovery that furnished a basis for believing that the pleadings in other suits against defendant Howard were related to matters involved in the present suit. But no foundation of this kind has yet been laid. Until it is, discovery should not be permitted along these lines.

2. *federal income tax returns for 1972, 1973 and 1974*

In addition to the pleadings in cases where he was named a party defendant, defendant Howard refused to produce his federal income tax returns for the years 1972–1974. Plaintiff argues that discovery of these returns is necessary to determine whether defendant was under financial pressure to increase his workload beyond the point where he could render satisfactory treatment to his patients. This argument, however, overlooks the important interest in preserving the confidentiality of federal tax returns.

■ Federal income tax returns are confidential communications between the taxpayer and the government. 26 U.S.C. §§ 6103, 7213(a) (1970)[4] insure that tax returns are protected from unauthorized disclosure while in the hands of government officials. The reason for this protection is straightforward. Unless taxpayers are assured that the personal information contained in their tax returns will be kept confidential, they likely will be discouraged from reporting all of their taxable income to the detriment of the government. The opposite is also true. Unless confidentiality is guaranteed, taxpayers will likely refrain from using all of the tax-saving measures to which they are lawfully entitled.

Admittedly, 26 U.S.C. §§ 6103 and 7213(a) only protect tax returns from unauthorized disclosure while in the hands of the government. And, even there, the protection is not unqualified. But the courts have broadly construed these provisions to embody a general federal policy against indiscriminate disclosure of tax returns from whatever source. Typical is the decision in *Federal Savings & Loan Insurance Corporation v. Krueger*, 55 F.R.D. 512 (N.D.Ill. 1972). In that case, plaintiff was denied discovery of defendant's federal tax returns on the grounds that the statutory policy against disclosure applies with equal force to protect tax returns in the hands of private litigants who do not waive the protec-

---

**3.** In addition to relevancy, the request for copies of pleadings also raises a question concerning the discoverability *vel non* of public documents to which the requesting party has equal access. But because decision of the relevancy issue disposes of the request in question, the Court need not address this second issue.

**4.** Nothing in the 1976 amendments to the tax code diminishes the confidential nature of federal tax returns. In fact, the opposite appears true. See 26 U.S.C.A. § 6103 (1977 Supp.).

tion by making an issue of their income.[5] *Id.* at 514. As the Court stressed: "To compel the taxpayers themselves to furnish copies of their returns unless they have waived that right by making an issue of their income would be a subterfuge and defeat the very purpose of the statute." *Id.* Accord, *Premium Service Corporation v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *Wiesenberger v. W. E. Hutton & Co.*, 35 F.R.D. 556, 557–58 (S.D.N.Y. 1964); *Kingsley v. Delaware, L. & W. Ry. Co.*, 20 F.R.D. 156, 158 (S.D.N.Y.1957).

Other courts have taken a less generous view of the statutory protection given to federal tax returns. *E. g., Heathman v. United States District Court*, 503 F.2d 1032, 1039 (9th Cir. 1974); *Trans World Airlines, Inc. v. Hughes*, 29 F.R.D. 523, 524 (S.D.N.Y. 1961), *aff'd*, 332 F.2d 602 (2d Cir. 1964), *cert. dismissed*, 380 U.S. 249, 85 S.Ct. 934, 13 L.Ed.2d 818 (1965). But even these decisions have recognized that tax returns are discoverable only "in appropriate circumstances," as where access to tax returns is necessary to replace "lost, destroyed or otherwise unavailable" sources of information or to determine accurately the relationship of co-defendants in a "tangled network of individuals, corporations and other legal entities." *Heathman v. United States District Court, supra*, 503 F.2d at 1032, 1033.

■ Under either line of authority, defendant Howard's tax returns are not properly discoverable. Here, as in *Krueger*, defendant has not made an issue of his income. Plaintiff has. And, unlike in *Heath-*

*man*, access to defendant's tax returns here is not essential to discovering relevant information that is not obtainable by other means. If, as plaintiff asserts, she bases her request for defendant's tax returns on the need to learn about the intensity of defendant's workload, her request can be met less intrusively by examining defendant's appointment book which the Court has ordered produced in an accompanying order.[6]

3. *medical records of each person upon whom defendant Howard performed a mandibular reduction operation utilizing the inside-the-mouth technique*

■ When asked to produce records of patients on whom he performed surgery of the kind he performed on plaintiff, defendant Howard refused on the grounds of privilege. Under District of Columbia law,[7] the medical records of patients are privileged from disclosure while in the hands of medical practitioners. D.C.Code § 14–307(a)[8] forbids doctors "without the consent of the person afflicted, or of his legal representative, to disclose any information, confidential in its nature, that he has acquired in attending a patient in a professional capacity. . . ." Insofar as the medical records in question necessarily reflect communications made by patients to defendant Howard in confidence, they fall squarely within the bounds of the statutory protection.

---

5. The Court is aware that defendant's income may be in issue where punitive damages are sought. See, e. g., *Hughes v. Groves*, 47 F.R.D. 52, 55 (D.Mo.1969). In the instant case, however, a review of the complaint fails to indicate that plaintiff is seeking punitive damages.

6. See note 1 supra.

7. Both parties have assumed that the question of privilege is to be decided by reference to District of Columbia law. The apparent reason for this assumption is that D.C.Code § 14–307(a), the local provision defining the doctor-patient privilege, is expressly binding on all courts sitting in the District of Columbia, whether territorial (Article I) or federal (Article III) in nature. See note 8 infra. Nothing in the

Federal Rules of Evidence counsels a different result.

8. D.C.Code § 14–307(a) provides:

In the Federal courts in the District of Columbia and District of Columbia courts a physician or surgeon may not be permitted, without the consent of the person afflicted, or of his legal representative, to disclose any information, confidential in its nature, that he has acquired in attending a patient in a professional capacity and that was necessary to enable him to act in that capacity, whether the information was obtained from the patient or from his family or from the person or persons in charge of him.

Nor does plaintiff contend otherwise. Plaintiff, however, endeavors to avoid the prohibition contained in the statute by urging the Court to order the material disclosed but with the identity of the patients deleted. Proceeding in that way, according to plaintiff, will adequately protect the confidentiality of the records. This proposal, however, runs directly counter to the plain intent of the statute. D.C.Code § 14–307(a) unmistakably forbids the disclosure of any confidential information about a patient unless the patient consents to the disclosure. If the Court were to take the tack suggested by plaintiff and order the production of the medical records with the identities of the patients deleted, plaintiff could separately obtain the names of defendant Howard's patients who received comparable treatment and, by making contact with them, could then match the records to the individual patients. In the Court's view, this eventuality would roundly defeat the protection furnished by the statute.

The Court is of the opinion that the purpose of the statutory privilege would be better served by a different procedure: by ordering defendant to turn over only the names and addresses of patients on whom he performed the treatment in question. With this information, plaintiff could then inquire of these individuals to determine whether *they* are willing to have their medical records disclosed in connection with this litigation. This procedure, in the Court's estimation, would adequately carry out the statutory purpose of preventing the *unconsented* disclosure of confidential medical information. *Cf. Connell v. Washington Hospital Center*, 50 F.R.D. 360 (D.D.C.1970) (names of hospital patients held properly discoverable).

### 4. *board certification*

During the November 1, 1976 deposition, counsel for plaintiff asked defendant Howard if he had taken any examinations to gain certification in a medical specialty. Defendant answered that he had not. Counsel then asked whether defendant had considered taking a certification exam, to which he answered affirmatively. Counsel pressed the point by asking defendant why, after he considered taking the examination, he had not done so. Defendant answered that gaining board certification in a specialty was not one of his main priorities. This response prompted counsel to ask what defendant's main priorities were. Defendant objected to this inquiry—rightly in the Court's view—on the grounds of relevancy.

The Court is convinced that the question asked of defendant concerning his main priorities is simply outside the bounds of relevancy as broadly defined in F.R.Civ.P. 26(a). Obviously, plaintiff was entitled to determine if defendant Howard had taken a certification examination and failed. Likewise, it would have been proper to ask how many times defendant took the exam before passing it. But after he had explained that he never took the exam because it was not one of his main priorities, the inquiry was at an end. To permit plaintiff to delve further along these lines would, in the Court's judgment, convert this lawsuit into a case study of defendant Howard's private affairs.

### 5. *possible causes of Temporomandibular Joint Syndrome and previous instances of intra-oral Sagittal Split surgery*

At his deposition, defendant Howard was asked to state possible causes of the condition he diagnosed in the instant case. Defendant answered the question but, immediately after he had done so, his attorney objected to the inquiry as irrelevant. *Cf. Gichner v. Antonio Troiano Tile & Marble Co.*, 133 U.S.App.D.C. 250, 259, 410 F.2d 238, 247 (1969) (expert testimony confined to questions of probabilities, not possibilities). The Court need not decide the issue of relevance for, whether the question is relevant or not, the fact remains that defendant fully answered it.

Defendant also satisfactorily answered the question put to him about the number of times he previously performed intra-oral Sagittal Split Osteotomy. When asked this question, defendant responded that he did

not recall the precise number. Counsel later posed substantially the same question to which defendant for a second time answered that he did not recall.

C. *Plaintiff is not Entitled to Entry of a Default Judgment Based on Defendant's Refusal to Make Discovery; nor is Either Party Entitled to an Award of Costs Incurred in Connection with the Motion to Compel.*

■ Default judgments are greatly disfavored in the law. In the discovery context, entry of a default judgment requires a showing of willful intransigence to discovery that is so compelling as to justify the presumption of liability. *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 350–51, 29 S.Ct. 370, 53 L.Ed. 530 (1909). This presumption arises where a party purposely fails to comply with a court order directing discovery. *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). It similarly arises where a party has engaged in a pattern and practice of making discovery "only on its own time schedule." *Bollard v. Volkswagen of America, Inc.*, 56 F.R.D. 569, 584 (W.D.Mo.1971).

■ This presumption, however, is not justified in the instant matter. Here, in sharp contrast to *Societe* and *Bollard*, the refusal by defendant to comply with the discovery requests of his opponent was largely warranted under the circumstances. Nor was defendant Howard under the compulsion of a court order when he resisted the efforts of opposing counsel at his deposition. It follows from this that entry of a default judgment against defendant would be wholly inappropriate.

■ The same is true with respect to an award of costs. While both sides in this heated controversy have gone farther than is permissible in seeking and resisting discovery, neither has taken a position so unjustified as to warrant the imposition of costs under F.R.Civ.P. 37(a)(4). Each party must bear the burden of his own expense in connection with plaintiff's motion to compel discovery.

## III. CONCLUSION

Consistent with the foregoing, defendant's motion to strike must be granted; plaintiff's motion to compel must be denied in part and granted in part and both motions for sanctions under F.R.Civ.P. 37(a)(4) must be denied. An appropriate order will be issued by the Court of even date herewith.

## ORDER

Consistent with the Memorandum Opinion issued by the Court of even date herewith, it is this 26th day of May, 1977,

ORDERED that defendant's motion to strike be, and the same hereby is, granted, the stricken matter to consist of the magazine article attached to plaintiff's motion; and it is

FURTHER ORDERED that plaintiff's motion for entry of a default judgment against defendant be, and the same hereby is, denied; and it is

FURTHER ORDERED that plaintiff's and defendant Howard's crossmotions for costs be, and the same hereby are, denied; and it is

FURTHER ORDERED that plaintiff's motion to compel discovery be, and the same hereby is, granted in part, and denied in part, as follows: Granted as to the items numbered One (1) and Three (3) in said motion and as to question numbered Seven (7) in same; Denied as to items numbered Two (2), Four (4) and Five (5), and as to questions numbered One (1), Two (2), Three (3), Four (4), Five (5), and Six (6); PROVIDED HOWEVER, that with regard to item numbered Five (5), defendant shall turn over to plaintiff a list of the names and last known addresses of persons upon whom defendant performed intraoral Mandibular Reduction surgery during the period October 18, 1969 and thereafter; and it is

FURTHER ORDERED that defendant make the discovery required by this Order by written interrogatory or oral or written deposition, at plaintiff's option, or by any other means agreed to by the parties.