Rocco J. DeMASI, M.D., the 96 Other Subpoenaed Witnesses Identified in Exhibit A Hereto, Gary Ardison, M.D., Thomas L. Bauer, M.D., Ivan L. Butler, M.D., S. W. Deisher, M.D., Jack A. Kline, M.D., Lois Kushner, M.D., S. Philip Laucks, M.D., Harold H. MacDougall, M.D., Iain L. McKenzie, M.D., John P. Whiteley, M.D., The York Hospital, and the Medical and Dental Staff of the York Hospital, *Petitioners*, No. 81–2171,

v.

Malcolm WEISS, *Respondent*,

and

Honorable Malcolm Muir, United States District Judge for the Middle District of Pennsylvania, *Nominal Respondent.*

Gary ARDISON, M.D., Thomas L. Bauer, M.D., Ivan L. Butler, M.D., S. W. Deisher, M.D., Jack A. Kline, M.D., Lois Kushner, M.D., S. Philip Laucks, M.D., Harold H. MacDougall, M.D., Iain L. McKenzie, M.D., John P. Whiteley, M.D., the York Hospital, and the Medical and Dental Staff of the York Hospital, *Petitioners*, No. 81–2192,

v.

Malcolm WEISS, *Respondent*,

Honorable Malcolm Muir, United States District Judge for the Middle District of Pennsylvania, *Nominal Respondent.*

Nos. 81–2171, 81–2192.

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1981.

Decided Jan. 8, 1982.

Stuart H. Savett, (argued), David H. Weinstein, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., Robert J. Brown, Kain, Brown, Roberts & Woodbury, York, Pa., for petitioners.

Arnold I. Levin, Michael D. Fishbein (argued), Adler, Barish, Levin & Creskoff, Philadelphia, Pa., Lewis H. Markowitz, Marc G. Tarlow, Markowitz & Seidensticker, York, Pa., for respondent.

Before ALDISERT, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

These original mandamus proceedings arise out of an on-going civil antitrust action, *Weiss v. York Hospital*, 524 F.Supp. 433 (M.D.Pa.), and require us to decide at No. 81–2192 whether to order the district court to decertify the plaintiff class, and at No. 81–2171 whether to order the district court to set aside a discovery order. We will deny the petitions at this time but retain jurisdiction over the petition at No. 81–2171 pending disposition of the trial on liability.

## I.

Dr. Malcolm Weiss, an osteopathic physician,[1] brought the underlying district court action after his application for staff privileges at York Hospital, York County, Pennsylvania, was rejected. He alleges that his application was denied because the hospital and certain allopathic physicians[2] on its staff conspired to deny osteopaths staff privileges at York, and that this conspiracy restrained trade in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. Dr. Weiss also alleges that the defendants violated section 2 of the Sherman Act, 15 U.S.C. § 2, by monopolizing, attempting to monopolize, and conspiring to monopolize health care services and facilities in the York Medical Service Area (MSA).

Since May, 1972, four osteopaths have applied for staff privileges at York, the largest and best equipped hospital in the York MSA. Two of these applications were accepted and one is pending; Dr. Weiss is the only osteopath whose application has been rejected. *See Weiss v. York Hospital*, 524 F.Supp. 433, 436 (M.D.Pa., 1981). Dr. Weiss' unique experience forms the backdrop of the petition at No. 81–2192 requesting mandamus relief from the district court's certification of a plaintiff class consisting of "all osteopathic physicians practicing medicine within the relevant market area...." App. at 560. The petitioners, defendants in

the district court, contend that the class certification order offends the teachings of *Lawlor v. National Screen Service Corp.*, 270 F.2d 146 (3d Cir. 1959), *cert. denied*, 362 U.S. 922, 80 S.Ct. 676, 4 L.Ed.2d 742 (1960), and *Mazus v. Dept. of Transportation*, 629 F.2d 870 (3d Cir. 1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). Petitioners' argument is essentially that the class must be limited to those osteopathic physicians who applied for and were denied staff privileges at the hospital, and that if it were so defined, Dr. Weiss would be the only member of the class.

The district court's discovery order of July 21, 1981, is challenged in the petition at No. 81–2171. The court ordered 97 nonparty allopathic physicians and 10 individual defendant physicians on staff at York to submit sworn statements of their gross incomes derived from the practice of medicine during the past five years.[3] The 97 nonparty witnesses, together with the defendant physicians, contend that compelled production of this information for the sole purpose of furnishing data for plaintiffs' opinion witnesses unlawfully invades their right of privacy.[4]

## II.

Congress has granted federal courts the power to issue writs of mandamus by the All Writs Act, 28 U.S.C. § 1651; but be-

---

1. Osteopathy is a form of medical practice based on the theory that diseases are due chiefly to a loss of body tissue structural integrity and that this integrity can be restored by physical manipulation in conjunction with medicines, surgery, proper diet, and other therapy. *See* Webster's Third New International Dictionary, Unabridged. Osteopathic physicians signify their degree as D.O.

2. Allopathy is a system of disease treatment by remedies that produce effects different from or opposite to those produced by the disease. *Id.* The term is applied loosely to general practice of medicine. Allopathic physicians signify their degree as M.D.

3. The discovery order of July 21, 1981, provides:

 2. Each of the physicians whose name is set forth in the addendum to the Defendants' motion for a protective order, Drs. Myers,

Piper, Woerthwein, Ardison, and Bauer and all other individual physician defendants shall within 10 days from the date of this order provide to Plaintiff's counsel Lewis H. Markowitz a written statement under oath of his or her gross income derived from the practice of medicine for each of the past five years, the number of years he or she has practiced in York County, his or her specialty, if any, and whether he or she is board certified and if so the field of certification. App. at 669. Paragraph 3 of this order limited disclosure of this information to plaintiff's lawyer and to the expert witnesses only. *Id.* at 669–70.

4. On July 30, 1981, a motions panel of this court stayed the discovery order pending disposition of the petition for mandamus. The district court has postponed the trial until the petition at No. 81–2171 is resolved.

cause the remedy is so drastic, the Supreme Court has instructed federal appellate courts to use the power grudgingly and only in extraordinary situations. *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976); *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967). Traditionally, federal courts have used the writ only to confine inferior courts to their lawful jurisdiction or to compel them to exercise authority when they have a duty to do so. *Will v. United States*, 389 U.S. at 95, 88 S.Ct. at 273. The Supreme Court has not employed a narrow and technical definition of "jurisdiction," but it has instructed that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Will v. United States*, 389 U.S. at 95, 88 S.Ct. at 273 (quoting *DeBeers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 1132–33, 89 L.Ed. 1566 (1945)).

The Court has set forth two important reasons for its direction that mandamus should be used sparingly. First, mandamus actions " 'have the unfortunate consequence of making the [district court] judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants appearing before him' in the underlying case." *Kerr*, 426 U.S. at 402, 96 S.Ct. at 2124 (quoting *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384–85, 74 S.Ct. 145, 148–49, 95 L.Ed. 106 (1953)). Second, and more important, mandamus is reserved for extreme cases out of respect for the important policy of disfavoring piecemeal appellate review:

> It has been Congress' determination since the Judiciary Act of 1789 that as a general rule "appellate review should be postponed . . . until after final judgment has been rendered by the trial court." *Will v. United States*, [389 U.S. at 96, 88 S.Ct. at 274]; *Parr v. United States*, 351 U.S. 513, 520–521 [76 S.Ct. 912, 917, 100 L.Ed. 1377] (1956). A judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by that judgment of Congress.

*Kerr*, 426 U.S. at 403, 96 S.Ct. at 2124 (footnote omitted).

■ In furtherance of its policy against casual grants of mandamus relief, the Supreme Court has set forth two conditions for issuance of the writ: (1) that the petitioner have no other adequate means to attain the desired relief, and (2) that he show a clear and indisputable right to the relief sought. *Kerr*, 426 U.S. at 403, 96 S.Ct. at 2124; *Will v. United States*, 389 U.S. at 95, 88 S.Ct. at 273; *Bankers Life & Cas. Co. v. Holland*, 346 U.S. at 384, 74 S.Ct. at 148–49; *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); *United States v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286, 287–88, 43 L.Ed. 559 (1899). Once these conditions are satisfied, the Court has stated that the matter is largely one within the discretion of the issuing court. *Kerr*, 426 U.S. at 403, 96 S.Ct. at 2124; *Schlagenhauf v. Holder*, 379 U.S. 104, 112 n.8, 85 S.Ct. 234, 239 n.8, 13 L.Ed.2d 152 (1964). The foregoing precepts guide our examination of the petitions before us.

## III.

The petitioners at No. 81–2192 recognize the above constraints, but argue that this is an extraordinary situation justifying review of the class action determination by mandamus. Their position finds jurisprudential nourishment in a statement in *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 752 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974) (in banc):

> If the court in entering a class action order acts outside its jurisdiction, *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970), *cert. denied*, 401 U.S. 910 [91 S.Ct. 871, 27 L.Ed.2d 808] (1974), or in disregard of appropriate procedural safeguards, *Swindell-Dressler Corp. v. Dumbauld*, 308 F.d 267 (3d Cir. 1962), the order may be reviewable by mandamus.

*Shutte* and *Swindell-Dressler*, the authority for this dictum, involved transfers of diver-

sity cases from one district court to another pursuant to 28 U.S.C. § 1404. Neither was a challenge to a class certification. In *Shutte* the district court had transferred the cause to a forum in which the plaintiff did not possess "an unqualified right" to bring the case at the time of the commencement of the action. Thus, by the terms of § 1404, the district court lacked jurisdiction to enter the order. 431 F.2d at 24. In *Swindell-Dressler* the district court, without notifying the parties, holding a hearing, or giving the defendant an opportunity to be heard, *sua sponte* transferred the case to another district.

We are not persuaded that the extraordinary circumstances envisioned in *Katz* are present here. The class action decision was clearly within the court's jurisdiction, Fed. R.Civ.P. 23, and was accompanied by the procedural safeguards of briefing and argument. The order remains subject to modification as circumstances require. Fed.R. Civ.P. 23(c).

What is involved is purely a question of applying the holdings of *Lawlor*, a precedent relevant to the applicable substantive antitrust law, and *Mazus*, an analogous Title VII case, to the slender factual record made for the class certification motion. In *Lawlor*, we said:

> Plaintiffs have never attempted to obtain from any of the film companies licenses under which they themselves would manufacture accessories and, in fact, have expressly stated that they do not desire such licenses. In the absence of such demand upon the part of plaintiffs, the courts have consistently held that there can be no recovery in an antitrust action.

270 F.2d at 154 (citing cases); *see also Fleer Corp. v. Topps Chewing Gum, Inc.*, 658 F.2d 139, 150 & n.17 (3d Cir. 1981). Similarly in *Mazus*, a Title VII case appealed on the ground that class certification had been denied, this court said:

> In this case there was no evidence that any other female ever applied for a roadworker job with PennDOT and was re-

jected. The statistical evidence is ambiguous at best. In sum, there was no evidence from which this court can conclude that the district court abused its discretion in failing to certify a class.

629 F.2d at 876. The petitioners contend that under *Lawlor* and *Mazus* the class can be composed only of osteopaths who have been denied staff privileges at York and that Dr. Weiss is the only person to meet this criterion. Their argument, at base, is that the district court, by defining the class more broadly, has ignored a binding precedent and thereby acted beyond its jurisdiction.

Dr. Weiss responds that the class should be excused from the demand requirement because each member wanted to apply but, knowing the hospital's hostility to osteopaths, would not do so. He argues that they were "chilled" because denial of staff privileges is so adverse to professional reputation that a physician cannot reasonably be expected to apply for such privileges unless he is relatively sure that his application will be accepted. *See Weiss v. York Hospital*, 524 F.Supp. at 435.

■ Based on the record before us, and after consideration of our *Lawlor* and *Mazus* decisions, we need not decide that petitioners' right to relief is "clear and indisputable." We need not meet this issue because petitioners have failed to persuade us that their contention cannot be raised either in an interlocutory appeal under 28 U.S.C. § 1292(b) or in an appeal from final judgment under 28 U.S.C. § 1291 if plaintiffs prevail at trial. The contention may also be raised again before the district court as it exercises its continuing responsibility to supervise the class under Fed.R.Civ.P. 23(c). The *sine qua non* of entitlement to mandamus relief is that the party seeking the writ have no other adequate remedies, *Kerr*, 426 U.S. at 403, 96 S.Ct. at 2124; *Roche*, 319 U.S. at 26, 63 S.Ct. at 938; *Commonwealth of Pennsylvania v. Newcomer*, 618 F.2d 246, 248 (3d Cir. 1980), and petitioners clearly have those means available.[5]

---

5. Our discussion applies with equal force to petitioners' contention that the action is inap-

propriate for class certification because the de-

■ We therefore adhere to the clear and settled precepts of this court: a class action determination, affirmative or negative, is not a final order appealable under 28 U.S.C. § 1291. *Hackett v. General Host Corp.*, 455 F.2d 618 (3d Cir.), *cert. denied*, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972). *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476, 98 S.Ct. 2454, 2462, 57 L.Ed.2d 351 (1978). If there is any route open for the interlocutory review of the grant or denial of class certification, at least in this case, it is pursuant to 28 U.S.C. § 1292(b). *Katz*, 496 F.2d at 752; *see Interpace Corp. v. City of Philadelphia*, 438 F.2d 401 (3d Cir. 1971).[6] *Cf. Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971) (class certification reversed in 28 U.S.C. § 1292(b) appeal). We will not employ mandamus in this case to circumvent these precepts and therefore the petition at No. 81–2192 will be denied.

### IV.

The petition by the non-party witnesses and the defendant physicians at No. 81–2171 presents a far more difficult issue. This petition challenges the order that they disclose their gross incomes from their medical practices. The district court accommodated plaintiffs' request that this information be disclosed in order to provide a data base for their expert witnesses' opinions on damage issues. The district court concluded that:

information concerning the gross billings of the physicians is relevant to the case in

that the economists on whom Plaintiff intends to rely to prove that the class was damaged have submitted affidavits indicating that a comparison of gross billings is required for them to determine whether the Plaintiff class has been damaged. App. at 668.[7]

We begin our analysis of the order with the observation that it intrudes into the personal finances of 97 non-party witnesses as well as ten individual defendants. It can scarcely be denied that the public exposure of one's wallet or purse is, in the abstract, an invasion of privacy. Nor can it be denied that private individuals have legitimate expectations of privacy regarding the precise amount of their incomes. Unless placed in issue, as in litigation, in a loan application, or when a federal statute or regulation may require publication of annual compensation, for instance, individuals employed in the private sector expect that the amount of their income need be divulged only to the taxing authorities, and to them with an expectation of confidentiality.

Although federal income tax returns are not specifically implicated here, the public policy regarding disclosure of their contents is pertinent. Congress has guaranteed that federal income tax returns will be treated as confidential communications between a taxpayer and the government. I.R.C. § 6103. *See Payne v. Howard*, 75 F.R.D. 465, 469 (D.D.C.1977); *Federal Sav. & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512, 514 (N.D.Ill.1972). Indeed, "[p]ublic policy favors the nondisclosure of income tax returns." *Cooper v. Hallgarten & Co.*, 34 F.R.D. 482, 483 (S.D.N.Y.1964). *See Payne*,

---

fenses to Dr. Weiss' claim are not typical of defenses they will raise against the class and the contention that individual issues will predominate in the litigation. Rule 23 grants district courts considerable discretion in certifying and supervising class suits; that discretion may be reviewed on appeal from a final judgment.

**6.** We reject petitioners' suggestion that *Katz* overruled *Interpace*. *See* Reply Brief for Petitioners at 23 n.13. *Katz* cited *Interpace* with approval for the proposition that mandamus will not lie if class certification is within the court's jurisdiction and was granted in a nonarbitrary manner. *See* 496 F.2d at 492.

**7.** The affidavits stated, in part:

2. Data on physician income, age, and specialty are important to establish the fact of damages and to estimate damages for this case. Part of damages are the lower incomes which osteopaths have earned as results of being denied privileges at York Hospital. To support this piece of information in the calculation of lost income is the actual difference in income between osteopaths without privileges and allopathic physicians with York Hospital privileges [sic].

App. at 641, 650.

75 F.R.D. at 469; *Krueger*, 55 F.R.D. at 514. As Judge Sirica explained in *Payne*:

The reason for this protection is straightforward. Unless taxpayers are assured that the personal information contained in their tax returns will be kept confidential, they likely will be discouraged from reporting all of their taxable income to the detriment of the government. The opposite is also true. Unless confidentiality is guaranteed, taxpayers will likely refrain from using all of the tax-saving measures to which they are lawfully entitled.

75 F.R.D. at 469. Similarly, in *Krueger*, 55 F.R.D. at 514, the court noted that the policy is "grounded in the interest of the government in full disclosure of all the taxpayer's income which thereby maximizes revenue." Implicit in the policy behind I.R.C. § 6103 and the authorities cited is the understanding that the crux of the issue is not merely the tax returns, but "the personal information contained in [the] tax returns . . . ." *Krueger*, 55 F.R.D. at 514.[8] Indeed, plaintiff implicitly recognizes the privacy interest at stake here by noting that he disclosed to defendants his income and billings only after the defendants stipulated to confidentiality. *See* Brief for Respondent Malcolm Weiss at 45.

We recognize also that privacy has a constitutional dimension that may be implicated in the disclosure ordered in this case. *See generally*, Warren & Brandeis, *The Right to Privacy*, 4 Harv.L.Rev. 193 (1890). The right to privacy under the Constitution has not been fully measured; the concept instead has developed on a case by case basis, finding its sources in implicit notions behind the first, fourth, fifth, ninth, and fourteenth amendments to the Constitution and the fundamental concept of liberty. *See United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 577 (3d Cir. 1980). *See, e.g., Roe v. Wade*, 410 U.S. 113, 152–53, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 (1973) (constitutional right to privacy sufficiently broad to encompass woman's desire to have an abortion); *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (privacy right to view obscene films at home); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (privacy encompasses decisions about contraception). We need not decide now whether the right not to disclose one's income under the circumstances of this case is of constitutional dimension, but we note that such an argument would not be considered frivolous by this court.

Against this privacy interest, the district court was required to balance a number of factors, including plaintiff's need for the information, its materiality, and its relevance. *See United States v. Westinghouse*, 638 F.2d at 578. *Cf. Riley v. City of Chester*, 612 F.2d 708, 716–17 (3d Cir. 1979) (showing required to overcome journalist's privilege). Our examination of the record does not reveal any representation by the plaintiff that his economists could render opinions on damage issues only with the benefit of the disclosures ordered by the court. *See id.* at 717. Indeed, much of the information sought may be available in government and private publications. *See, e.g.,* Department of Labor, Occupational Outlook (1981); American Medical Association, Profile of Medical Practice (1980). Nor can we ignore the remote relevance of the information ordered produced. Plaintiff argues that the income data for each doctor, together with information about age, specialty, and years of practice, will enable his experts to compare the income of osteopaths without staff privileges with allopaths having staff privileges at York, and from this comparison to estimate damages. We note at the outset that the most relevant comparison would be between osteopaths with and without York staff privileges. Plaintiff inexplicably has not sought income information from the two osteopaths on staff. In addition, an opinion

---

**8.** Federal courts have generally refused to compel disclosure of income tax returns or related information from litigants who have not put their own income at issue. *See, e.g., Payne*, 75 F.R.D. at 470; *Krueger*, 55 F.R.D. at 514; *Wiesenberger v. W. E. Hutton & Co.*, 35 F.R.D. 556, 558 (S.D.N.Y.1964); *Cooper v. Hallgarten & Co.*, 34 F.R.D. at 484.

based on the requested naked data may be extremely suspect because the opinion would fail to account for factors other than staff privileges, age, specialty, and experience that might cause income variations between the two groups. This is especially critical because the plaintiffs requested net income figures, but the court, with no additional foundation, ordered the petitioners to produce gross income, a difference of considerable magnitude.

Finally we cannot overlook that the information is sought only to serve as the foundation for plaintiff's privately retained economists to form an opinion about plaintiff's alleged loss of income, if any. "Without intending undue cynicism, we are aware of the realities of expert testimony, as we are mindful of the limitations of opinion evidence." [9] *Huddell v. Levin*, 537 F.2d 726, 735–36 (3d Cir. 1976).

We have set forth the foregoing observations only to emphasize the significance of the discovery order and to evaluate the objections raised to it. In the view we take, we need not review the order's correctness at this time. We conclude only that petitioners' privacy claims are not frivolous but serious, and that had we been sitting as trial judges, we would have concluded that an order compelling the disclosure of the information in paragraph 2, however limited by paragraph 3,[10] is an order implicating a controlling question of law on which there is substantial ground for difference of opinion. *See* 28 U.S.C. § 1292(b). The petitioners' concerns go to the heart of an important concept protected by vital policy considerations, as shown by the specific Congressional mandate in the related matter of tax returns, and may well implicate constitutional rights.

## V.

■ It is settled in this court that discovery matters generally are not reviewable until after final judgment. *Eastern Maico Distributors, Inc. v. Maico-Fahrzeugfabrik, G.m.b.H.*, 658 F.2d 944, 947 (3d Cir. 1981); *Borden Company v. Sylk*, 410 F.2d 843 (3d Cir. 1969). In *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981), the Supreme Court explained:

[The] rule that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits, serves a number of important purposes. It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition,

9. Opinion evidence has long been skeptically regarded as a dubious kind of proof. "It is mere opinion, which is not evidence." *Carter v. Boehm*, 3 Burr. 1905, 1918 (1766) (Mansfield, J.). Courts today may be less dogmatic, but the skepticism remains. *See generally* McCormick on Evidence §§ 11, 12 (1972). "Of all forms of evidence, opinion evidence is the weakest and least reliable. Even though uncontradicted it need not be accepted." *Blue Mountain Tel. & Tel. Co. v. Pennsylvania Public Utility Comm'n*, 165 Pa.Super. 320, 327, 67 A.2d 441, 444 (1949). *Huddell v. Levin*, 537 F.2d 726, 736 n.4 (3d Cir. 1976).

An opinion is only that: it creates no fact. . . . Because of this, opinion evidence is generally considered of a low grade, and not entitled to much weight against positive testimony of actual facts.

*Ray, to Use of Miller v. City of Philadelphia*, 344 Pa. 439, 441, 25 A.2d 145, 146 (1942); *see* also *In Re Pochron's Estate*, 367 Pa. 306, 311, 80 A.2d 794, 796–97 (1951); *McCormick Transportation Co. v. Philadelphia Transportation Co.*, 161 Pa.Super. 533, 538–39, 55 A.2d 771, 774 (1947). *See generally* G. Henry, Pennsylvania Evidence § 565 (1953).

10. Paragraph 3 of the order provides:

The information disclosed by the physicians shall not be disclosed to Dr. Weiss or to any member of the class or to anyone other than Plaintiff's counsel and Plaintiff's economist experts. Further, Plaintiff shall not in any proceedings in this action, including trial, reveal directly or indirectly the income of any individual physician except to the extent that it is unavoidable in the experts' damage analysis as, for example, if there is only one physician in a particular department.

App. at 669–70.

the rule is in accordance with the sensible policy of "avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." *Cobbledick v. United States*, 309 U.S. 323, 325 [60 S.Ct. 540, 541, 84 L.Ed. 783] (1940). *See DiBella v. United States*, 369 U.S. 121, 124 [82 S.Ct. 654, 656, 7 L.Ed.2d 614] (1962). The rule also serves the important purpose of promoting efficient judicial administration. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 [94 S.Ct. 2140, 2149, 40 L.Ed.2d 732] (1974).

Although we examine the discovery order in the context of mandamus, rather than by appeal, the considerations that underlie this court's policy against interlocutory review of discovery orders are also pertinent:

> It is a well-established principle that the scope and conduct of discovery are within the sound discretion of the trial court. It is equally well established that such orders compelling or denying discovery are generally interlocutory. Since the enactment of the Judiciary Act of 1789, the Congress has consistently directed that the jurisdiction of the courts of appeals should extend only to decisions of the district courts which are final. 28 U.S.C. § 1291. Only certain specifically enumerated orders which would otherwise be considered interlocutory, contained in Section 1292 of Title 28, none of which are involved here, are appealable.
>
> . . . .
>
> Close questions of finality are not ordinarily presented where, as here, the appeal is from an order compelling or denying discovery. This is so because such orders bespeak their own interlocutory character. They are necessarily only a stage in the litigation and almost invari-

ably involve no determination of the substantive rights involved in the action. *Borden Co. v. Sylk*, 410 F.2d at 845.

The petitioners nevertheless argue with much conviction that a serious question of finality is present here; that the very act of obeying the court's order will constitute an immediate, irreparable violation of their right of privacy. Although we cannot minimize the thrust of this argument, we must, at the same time, follow the polestar that gives direction in mandamus actions: that the federal mandamus petitioner have no other adequate means to attain the relief that is desired. *See Commonwealth v. Newcomer*, 618 F.2d at 248.

■ A non-party witness may not obtain appellate review of the mere issuance of a discovery order requiring production of information or other action. *Borden Co. v. Sylk*, 410 F.2d at 846; *United States v. Fried*, 386 F.2d 691 (2d Cir. 1967).[11] In *Alexander v. United States*, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), the Supreme Court held that until the witness is adjudicated in contempt such an order lacks finality: "Let the court go further and punish the witness for contempt of its order, then arrives a right of review . . . ." *Id.* at 121, 26 S.Ct. at 357–58. *See Cobbledick v. United States*, 309 U.S. 323, 326–27, 60 S.Ct. 540, 541–42, 84 L.Ed. 783 (1940). The non-party witnesses therefore have a remedy by appeal, but that right must await their willingness to stand in contempt of the district court's order.

The 10 defendant physicians, however, have no immediate right to appeal from civil contempt citations imposed to gain compliance with a discovery order. *Cromaglass Corp. v. Ferm*, 500 F.2d 601, 604 (3d Cir. 1974) (in banc); *see also In re Attorney General*, 596 F.2d 58 (2d Cir.), *cert. denied*, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979). *See generally Eastern Maico Distributors, Inc. v. Maico-Fahrzeugfabrik, G.m.b.H.*, 658 F.2d 944 (3d Cir. 1981). Instead, the parties must await final judg-

---

**11.** To the extent that *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 996 (10th Cir. 1965), holds otherwise, we find it unpersuasive.

*See* 9 J. Moore, Federal Practice ¶ 110.13[2] (2d ed. 1980).

ment to have the order reviewed, unless permitted to take an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

As we note these general precepts that incline us to deny review at this time, we also recognize two important factual considerations that distinguish this case from the mine-run discovery order. First, the order is directed to both parties and non-parties, only some of whom will have the right of immediate appeal following the imposition of civil contempt sanctions if they refuse to obey the district court's order. *Cromaglass,* 500 F.2d at 604. Second, the 107 petitioners before us constitute almost one-half of all physicians in York County. Exposing this many providers of health care to incarceration, the possible sanction available to a district court imposing civil contempt, would run counter to the common weal and create the potential for havoc in the York community. It is one thing to have so many members of the profession in the medical service area exposed to opprobrium for acts that have been adjudicated to be antisocial or illegal; it is quite another to subject these professionals to such sanctions merely for the benefit of private litigants seeking monetary compensation and specific relief. *Cf. In re Attorney General,* 596 F.2d at 62–67 (mandamus granted to review district court order finding Attorney General in contempt for failing to disclose FBI informant files because of potential disruption of law enforcement activity).

 These circumstances make our task extremely difficult, because we could conclude, with adequate reason and authority, that the petitioners, or at least some of them, have demonstrated an "exceptional situation" and have satisfied the stringent requirements of having the mandamus petition considered on the merits. We shall not reach the merits of their complaint at this time, however, because we believe that there remains the possibility that this troublesome discovery issue need not be decided either here or in the district court. By recognizing that the petitioners' right of privacy argument need not be reached, we remain faithful to another important judi-

cial precept: that courts avoid where possible the adjudication of constitutional issues. *Hayburn's Case,* 2 U.S. (2 Dall.) 409, 1 L.Ed. 436 (1792). *See also New York Transit Authority v. Beazer,* 440 U.S. 568, 582 & n.22, 99 S.Ct. 1355, 1364 & n.22, 59 L.Ed.2d 587 (1979); *Rescue Army v. Municipal Court,* 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947).

The posture of the proceedings below indicates that the damage phase of the trial will not be reached if liability is not established. By terms of the district court's order of August 3, 1981, the trial will be bifurcated "as between damages and liability." App. at 672. Although plaintiffs must prove injury in the liability phase of the trial, we conclude and therefore hold that the discovery order of July 21, 1981, relates to the issue of damages only. We are confident that whatever information may be derived for this purpose is unnecessary to prove the fact of injury and thus we perceive no reason why the trial of liability should not go forward immediately. Because the district court has ordered the case to trial ten days "following the ruling of the Court of Appeals on the discovery matter presently pending in that Court," App. at 673, we explicitly direct that the trial may go forward as directed by the trial court only on the issue of liability. The stay of paragraph 2 of the district court's order of July 21, 1981, previously entered by this court, will remain in effect.

If liability is established, the district court, having become aware of our determination that the discovery issue may qualify as one of the "extraordinary situations" that justify mandamus, and our further determination that the order raises arguable questions of constitutional rights, will then be in a position to certify the question for appeal under 28 U.S.C. § 1292(b). The question raised by paragraph 2 of the discovery order of July 21 may be considered as one involving "a controlling question of law as to which there is substantial ground for difference of opinion."

## VI.

The petition at No. 81–2192 will be denied. This court will retain jurisdiction of the petition at No. 81–2171 and the parties are directed to advise the Clerk of the outcome of the liability phase of the proceedings below. The stay of paragraph 2 of the district court's order of July 21, 1981, previously entered by this court, will remain in effect.