Christopher M. SNOWDEN, a minor, By and Through his Natural Guardian and Next Friend, Teresa A. (Snowden) VICTOR; and United States of America, Plaintiffs,

v.

CONNAUGHT LABORATORIES, INC., a Delaware Corporation; Connaught Laboratories, Ltd., a Canadian Corporation, Defendants.

Civ. A. No. 89–1341–T.

United States District Court, D. Kansas.

Feb. 14, 1991.

Andrew W. Hutton of Michaud Hutton and Bradshaw, Wichita, Kan., Ted Warshafsky of Warshafsky, Rotter, Tarnoff, Gesler, Reinhart & Bloch, S.C., Milwaukee, Wis., for plaintiffs.

Thomas J. Lasater, David C. Seely of Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., Mike Barkley, Pete Silva, Jr., Jay B. White, Jr. of Barkley, Rodolf, Silva, McCarthy & Rodolf, Tulsa, Okl., for defendants.

## MEMORANDUM AND ORDER

JOHN B. WOOLEY, United States Magistrate Judge.

Under consideration this 14th day of February, 1991, is Plaintiffs' Motion to Compel Defendants to Produce Documents Requested in Plaintiffs' First Request for Production to Defendant Connaught Laboratories (Dkt. # 53) and Memorandum in Support thereof (Dkt. # 54), both filed February 1, 1990. Defendant Connaught Laboratories, Inc., filed a Memorandum in Response to this Motion and in Support of a Motion for a Protective Order Prohibiting Disclosure (Dkt. # 62, February 23, 1990).

Hereafter, Connaught Laboratories, Inc. will be referred to as "Connaught, Inc." and Connaught Laboratories, Ltd. will be referred to as "Connaught, Ltd".

Plaintiffs are represented by Andrew W. Hutton of Michaud, Hutton and Bradshaw of Wichita, Kansas and Ted Warshafsky of Warshafsky, Rotter, Tarnoff, Gesler, Reinhardt & Bloch of Milwaukee, Wisconsin. Defendants are represented by Thomas J. Lasater and David C. Seely, of Fleeson, Gooing, Coulson & Kitch of Wichita, Kansas and Mike Barkley, Pete Silva, Jr. and Jay B. White, Jr. of Barkley, Rodolf, Silva, McCarthy & Rodolf of Tulsa, Oklahoma.

This case is a products liability action involving the DPT vaccine. The vaccine is used for the prevention of diphtheria, tetanus and pertussis (whooping cough). Plaintiffs allege that Christopher Snowden was vaccinated with DPT on February 10, 1984; that the vaccine was manufactured by Connaught, Inc. and that as a result, Christopher suffered serious and permanent injuries. Plaintiffs' theories of recovery include claims grounded in strict liability, breach of warranty, failure to warn and negligence.

Plaintiffs submitted their First Request for Production on October 3, 1989, and on November 14, 1989 Defendant requested, and Plaintiffs agreed to, a 30 day extension of time in which to file a response to the requests. On December 6, 1989, defendant made its written objections to plaintiffs' request. Plaintiffs request an order compelling defendants to produce the documents in issue. The documents fall into two categories, (1) documents, records and pleadings growing out of prior litigation against both defendants, described in paragraphs 1–7 of plaintiffs' Request, and (2) Physician's Side Effect Reports and Adverse Reaction Reports (ARRs), etc., described in paragraph 8 of plaintiffs' Request.

Plaintiffs have requested oral argument. The court finds that it does not now appear to the court that oral argument would be helpful in the decision of the instant mo-

tion. Pursuant to Rule 206(d) of the Rules of Practice of the United States District Court for the District of Kansas, plaintiffs' request for oral argument is denied. The court may later request oral argument.

## I. PRIOR LITIGATION:

Plaintiffs' First Request for Production requested that Connaught Laboratories supply, in part, the following documents, pleadings and records from prior cases in which Connaught, Inc. has been sued based on DPT vaccine:

1. Copies of all interrogatories directed to Connaught Laboratories, Inc. and any co-defendants, and copies of all responses thereto.

2. Copies of all demands for production of documents directed to Connaught Laboratories, Inc. and any co-defendants, and copies of all responses thereto.

3. Copies of all requests for admissions directed to Connaught Laboratories, Inc. and any co-defendants and copies of all responses thereto.

4. Copies of all depositions taken of Connaught Laboratories, Inc. employees and former employees in all of said cases.

5. Copies of any depositions taken of Connaught Laboratories, Ltd., of Canada in any of said cases.

6. Copies of transcripts of court testimony of Connaught Laboratories, Inc. employees and former employees in any of said cases.

7. Copies of transcripts of court testimony of Connaught Laboratories, Ltd. of Canada employees and former employees in any of said cases.

Plaintiffs argue that the documents sought are relevant and material, because the other lawsuits are identical in nature to the instant case and concern the same circumstances and DPT vaccines manufactured by defendant. Plaintiffs contend that the production of the requested documents would diminish the need for additional discovery, because defendant's experts will most probably testify to the same matters, and thus it would obviate the necessity of taking numerous depositions of defendant's experts and employees, and would serve to limit the breadth and scope of discovery.

Defendants assert that the plaintiffs are not entitled to the above documents for the following reasons:

1. The request is unduly burdensome and excessive due to the scope;

2. It is not reasonably calculated to lead to admissible evidence;

3. Defendants have provided plaintiffs with information, i.e. a list of prior cases setting out plaintiff's name, jurisdiction, state and name of plaintiff's counsel;

4. Plaintiffs already have some of the requested material in their possession, since plaintiffs' counsel is now and has appeared in prior cases against Connaught;

5. Some materials are protected by the attorney work product doctrine; and

6. Requests for documents produced by co-defendants evidences the unreasonableness of the requests.

Defendant argues that plaintiffs have been provided with a list of the prior Connaught, Inc. DPT cases (213 in number), identifying the plaintiff, jurisdiction (location) and the name of plaintiff's counsel. Defendant asserts that no central depository exists for the records, pleadings and documents; that they are in the possession of various lawyers who are no longer employed by Connaught, Inc. and are located in various parts of the country. Defendant therefore argues that the burden placed upon Connaught, Inc., by an order compelling production of these documents would be overwhelming. Defendant alleges that plaintiffs have the means to obtain the documents from the court files or other counsel for plaintiffs. In addition, defendant argues that plaintiffs' counsel is experienced with DPT litigation, and they speculate that plaintiffs already have some of the requested materials in their possession.

Defendant also contends that the work product doctrine also shields from discovery documents from terminated litigation. Defendants state that some of the requested documents contain highlighting

notes or comments of counsel, and therefore would fall under the protected work product doctrine. Such notes could be excised, but, defendant argues, only after they have reviewed each document in the 213 cases, and this would place an undue burden on them. Defendant argues that plaintiffs have failed to demonstrate "substantial need" or "undue hardship" which Rule 26(b)(3) of the Federal Rules of Civil Procedure imposes before disclosure of counsel's "mental impressions, conclusions, opinions or legal theories."

a. Relevancy:

The Tenth Circuit stated in *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir.1975) "[i]t is plain that the scope of discovery through interrogatories and requests for production of documents is limited only by relevance and burdensomeness ...".

The test for relevancy is a liberal one. "Discovery relevance is minimal relevance reasonably calculated to lead to the discovery of admissible evidence under FRCvP 26. 'Discovery is to be considered relevant where there is any possibility that the information sought may be relevant to the subject matter of the action.'" *Renshaw v. Ravert*, 82 F.R.D. 361, 363 (E.D.Pa. 1979) quoting *United States v. International Business Machines Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y.1974).

Therefore, a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the subject matter of the action. Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action. *Hoeme v. Golden Corral Corp.*, No. 89–1530 (D.Kan. June, 1990) (Reid, M.) citing *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D.Mass.1984); *Roseberg v. Johns–Manville Corp.*, 85 F.R.D. 292, 296 (E.D.Pa.1980); *Miller v. Doctor's General Hospital*, 76 F.R.D. 136, 138–139 (W.D.Okla.1977).

Plaintiffs argue that the issues previously litigated are relevant to the present case because the lawsuits are identical in nature and production of these documents would alleviate the necessity of taking numerous depositions. Plaintiffs rely on *Carter–Wallace, Inc. v. Hartz Mountain Industries, Inc.*, 553 F.Supp. 45 (S.D. N.Y.1982) to support the proposition that not only depositions, but also interrogatories and transcripts of trial testimony are discoverable.

The *Carter–Wallace* case focused on a deponent's right to invoke the Fifth Amendment privilege against self-incrimination during a deposition. The court in the Southern District of New York upheld the right to assert this privilege, because there was a real possibility that some of the defendant's top executives would face prosecution as a result of a grand jury investigation. The court summarily, without any rationale, ordered the defendants to turn over transcripts of depositions taken during prior litigation with the caveat that the confidentiality of the material would be protected.

To stretch this brief eight line order in the *Carter–Wallace* case to encompass the idea that depositions, interrogatories, requests for admissions, demands for production and trial transcripts can be discovered carte blanche, is to give it a scope broader, the court believes, than is justified.

In *Payne v. Howard*, 75 F.R.D. 465 (D.C.D.C.1977), a medical malpractice case, plaintiff sought to obtain copies of pleadings filed in other, unrelated medical malpractice suits against defendant. The court stated:

The threshold question here is relevance. Although relevance in the context of discovery is decidedly broader than in the context of admissible evidence, it is not without limits. Parties to a lawsuit are only entitled to discover information that "appears reasonably calculated to lead to the discovery of admissible evidence.." F.R.Civ.P. 26(b)(1). Whether pleadings in one suit are "reasonably calculated" to lead to admissible evidence in another suit is far from clear. F.R.Evid. 401, 406. In the Court's view, discovery of this type of information typically will *not*

lead to admissible evidence. *Id.* But that determination depends on the nature of the claims, the time when the critical events in each case took place, and the precise involvement of the parties, among other considerations.

(emphasis in original) *Payne* at 469.

The court's decision pointed out that there had been no showing that the pleadings in other cases were related to any of the issues raised in *Payne* and if there had been such a showing, the ruling would have been different.

The claims asserted in the present case against Connaught, Inc. would presumably be the same types of claims asserted in the 213 cases Connaught references. The subject matter of the litigation, presumably the question of a defect in the DPT vaccine, would be the same. Connaught is the defendant in all the lawsuits and thus the same type of issues would be addressed. The parties do not indicate whether these cases are still on-going, or if they have all terminated in some fashion. Defendant does however, mention that these cases span a twelve year time frame. Christopher was vaccinated in 1984, seven years ago. In the context of this case, where the research, testing and manufacture of DPT vaccine took many years, it is possible that information which could be distilled from lawsuits instituted as long as twelve years ago, could prove highly relevant to issues in the instant case. In addition, such information could save the time and expense of duplicating discovery aimed at the same issues and materials already produced in prior litigation.

The court is not in a position to determine whether any of the materials obtained would be admissible evidence in the present case. Such a determination would be made by the district court prior to or during trial. However, because of the similarity of the cases, it is not unlikely that discovery of this nature will lead to admissible evidence.

The court finds, therefore, that plaintiffs' claim of relevance has merit, and that the documents, pleadings and records plaintiffs seek meet the broad test of relevancy under Rule 26 and the case law construing that rule.

b. Application of the Work Product Doctrine:

The court's inquiry does not end with the application of the relevancy test, since the defendant has raised the work product doctrine as a bar to discovery. The work product doctrine was first defined in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The decision in *Hickman* regarding work product has been codified in Rule 26(b)(3) FRCvP, which reads, in pertinent part:

> Subject to provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

The cases and authorities have interpreted this portion of the rule to define "ordinary" attorney work product discoverable where the movant can show a substantial need for the material and an inability to acquire the substantial equivalent without undue hardship. The terms "substantial need" and "undue hardship" referred to in Rule 26(b)(3) have yet to be fully and finally defined by the courts. In *Pappas v. Holloway et al.*, 787 P.2d 30, 114 Wash.2d 198 (1990), the court described the type of "substantial need" required for disclosure, stating:

> To justify disclosure, a party must show the importance of the information to the preparation of his case and the difficulty the party will face in obtaining substantially equivalent information from other sources if production is denied.... The clearest case for ordering production is

when crucial information is in the exclusive control of the opposing party.

citing *Heidebrink v. Moriwaki,* 104 Wash.2d 392, 706 P.2d 212 (1985).

The balance of subsection (b)(3) of the rule provides:

> In ordering discovery of such materials, when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

The cases and authorities have interpreted those words to describe attorney "opinion" work product. Attorney "opinion" work product is afforded a greater protection than "ordinary" work product. *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Sporck v. Peil,* 759 F.2d 312, 316 (3rd Cir.), *cert denied* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed. 2d. 230 (1985); *In re Murphy,* 560 F.2d 326, 334 (8th Cir.1977).

The party claiming work-product protection as a bar to discovery, has the burden of establishing that it is applicable. *Barclaysamerican Corp. v. Kane,* 746 F.2d 653, 656 (10th Cir.1984); *Peat, Marwick, Mitchell & Company v. West,* 748 F.2d 540 (10th Cir.1984); *Casson Construction Co. v. Armco Steel Corp.,* 91 F.R.D. 376, 384 (D.Kan.1980).

In a leading case, the Fourth Circuit reviewed the question of whether attorney opinion work product material developed in prior terminated litigation may become the subject of discovery in connection with subsequent litigation. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480 (4th Cir.1973) *Reh'g,* 509 F.2d 730 (4th Cir.1974), *cert. denied* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975); *later appeal, Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215 (4th Cir.1976).

The *Duplan* case concerned patent-antitrust litigation, whereby Duplan charged Chavanoz and others with violations of the Sherman Act. Duplan sought discovery of work product materials developed by Chavanoz's attorneys relating to settlement of various lawsuits against Chavanoz in 1964. The Fourth Circuit stated:

> We hold that such opinion work product material, as distinguished from material not containing mental impressions, conclusions, opinions, or legal theories, is immune from discovery although the litigation in which it was developed has been terminated.

*Duplan,* 509 F.2d 730, 732. The Fourth Circuit stated that "[i]n our view, no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories." *Id.* at 734. A frequently stated exception applies in situations where the attorney claims protection for himself under the rule from a claim of crime, fraud or tort. The only other exception disclosed by the court's research is where the opinion work product is "at issue" in the case before the court. *See e.g. Bio–Rad Laboratories, Inc. v. Pharmacia, Inc.,* 130 F.R.D. 116 (D.C.N.D.Cal.1990), (attorney's opinion work product was discoverable where the information was directly in issue and the need for production was compelling); *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926 (D.C.Cal.1976).

The law appears well settled that an attorney's "opinion" work product is normally afforded a greater protection than other kinds of work product. *Hickman v. Taylor, supra,* and *Upjohn v. United States of America,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Therefore plaintiffs must show more than "substantial need" and "inability to otherwise obtain the equivalent" as to those portions of the records and documents which are "opinion" work product. Speaking of the "mental processes" of an attorney, the United States Supreme Court stated in *Upjohn, supra* "... work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." *See also Hamel v. General Motors Corporation,* 128 F.R.D. 281 (D.Kan.1989) (far stronger showing required than just "substantial need" and "undue hardship" to lift immunity from production for opinion work prod-

uct); *In re Murphy,* 560 F.2d 326 (8th Cir.1977); *United States v. O.K. Tire & Rubber Co.,* 71 F.R.D. 465 (D.C.Idaho 1976).

■ A close reading of the authorities and cases, including *Hickman* and *Upjohn, supra,* indicates, the court believes, that discovery of attorney *opinion* work product may require a showing by movant of something entirely different from "substantial need" and "undue hardship" rather than simply a greater amount of "need" and a greater degree of "hardship" required to discover ordinary work product.

■ In *Taylor v. Wyeth Labs, et al.,* No. 84 1474 Unpublished, Slip Op. at 2 (D.Kan., February 10, 1987) (Sam A. Crow) Judge Crow stated:

"[t]he court recognizes that the work product privilege extends to documents prepared in anticipation of previous, terminated and unrelated litigation, *see In re Murphy,* 560 F.2d 326 (8th Cir.1977), and that the selection and compilation of documents by counsel falls within the highly-protected category of opinion work product. *Sporck v. Peil,* 759 F.2d 312, 316 (3rd Cir.1984) *cert. denied* [474 U.S. 903] 106 S.Ct. 232 [88 L.Ed.2d 230] (1985); *James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138, 144 (D.Del.1982). Opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances."

Some of the information plaintiffs seek in the instant motion may be ordinary work product. Some may be opinion work product. Defendants claim some of the records and documents requested are filed with the respective courts in which the case was tried. Some, it appears from their briefs, and the Affidavit of Gary E. Ebbert, Vice-President Operations for Connaught, Inc. (attached as "Exhibit A" to Dkt. # 62), are in defendants' possession. Transcripts of trial testimony would not normally come under the protection of either kind of work product since it has been disclosed through trial to the public at large. Although within the District of Kansas, court rules do not require that requests for production and requests for admissions be filed with the court, other jurisdictions operate differently under their own local rules. It can be argued that the composition of questions, the compilation of records and documents and the direction of discovery by counsel in prior lawsuits is a reflection of the "mental processes" of counsel. However, such records and documents, once filed with the court, unless subject to a protective order in that case, are normally a matter of public knowledge. Such publicly disclosed documents, writings and records, therefore, even though they do contain the "mental impressions, conclusions, opinions or legal theories" of an attorney, are discoverable. A record, document or pleading, for example, a "Request for Admission", and/or the Response thereto, in and of itself might not fall within the category of "attorney opinion work product." However, handwritten notations or thoughts of counsel written thereon might be protected as "attorney opinion work product" if they are a reflection of the attorney's "mental impressions, conclusions, opinions or legal theories" placed there at or near the time he or she reviewed that particular document, record or pleading, in anticipation of, or in preparation for, litigation.

The instant request does not fall into one of the very narrow exceptions, mentioned above, to the doctrine's bar to discovery of opinion work product. The opinion of counsel is not "at issue" in this case, nor has the "crime, fraud or tort" exception been raised.

c. Burden on the parties:

■ Defendant argues that the discovery requested is oppressive and burdensome. Once a party has requested discovery, the burden is on the party objecting to show that responding to the discovery is unduly burdensome. *Zucker v. Sable,* 72 F.R.D. 1 (S.D.N.Y.1975).

■ "The mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship and possibility of injury to the business of the party from whom discovery is sought

does not of itself require denial of the motion. Rule 26(c) speaks of "undue burden or expense" and discovery should be allowed unless the hardship is unreasonable in the light of the benefits to be secured from the discovery." C. Wright and A. Miller, 8 *Federal Practice and Procedure* § 2214, p. 647–48 (1970) (citations omitted). The fact that an unwieldy record keeping system would require heavy expenditures of time and effort to produce requested documents, is not a sufficient reason to prevent disclosure of otherwise discoverable material. *Belmont Square, Inc. v. Continental Casualty Co.*, No. 85–2239 (D.Kan. July, 1986) (Theis, J.); *see Pollitt v. Mobay Chemical Corp.*, 95 F.R.D. 101, 105 (S.D.Ohio W.D.1982); *Kozlowski v. Sears, Roebuck*, 73 F.R.D. 73 (D.Mass.1976).

"It is well established that discovery need not be required of documents of public record which are equally accessible to all parties." *Securities & Exchange Commission v. Samuel H. Sloan & Co.*, 369 F.Supp. 994, 995 (S.D.N.Y.1973).

█ In the present case, some of the information plaintiffs seek may be obtained from public documents. The burden placed on accessing these records, documents and pleadings would be heavy if plaintiffs had to obtain them from courthouses scattered across the country. It would be a great deal more convenient and less costly for plaintiffs to view the documents at one location, either in place or as a result of having defendants produce them at one place.

In "Exhibit A", an Affidavit of Gary B. Ebbert, attached to defendant's Memorandum (Dkt. # 62), Ebbert states that "Connaught Laboratories, Inc. does not have *complete* copies of litigation files." The implication is that Connaught *does have some* or part, of the litigation files in its possession. Also on page 8 of Connaught's Memorandum (Dkt. # 62), Connaught, Inc. states "... Connaught's entire involvement with DPT production, necessarily involves closed files whose contents have been selectively culled with the conscious intent to retain those materials which would be of

benefit to ongoing litigation." Again, the impression given the court is that Connaught, Inc., despite denials that no *central depository exists* (Exhibit A to Dkt. # 62), appears to have, if not all documents, at least some quantity, in its possession at some one location.

Defendant does not give the court any indication of how many pleadings or documents or what kinds of writings may have been augmented by the addition of notations reflective of attorney opinion work product. Connaught merely recites a conclusionary statement that it would take considerable time to conceal or excise any notations or markings. Also, the court has no idea (and plaintiffs do not educate the court) of how many documents or writings plaintiffs' counsel may have in his possession from prior similar lawsuits against Connaught, Inc. or Connaught, Ltd. Defendant only makes the blanket statement that plaintiffs' counsel has some of the documents in his "litigation library".

In balancing the respective burden on the parties, the court believes that as to the material requested from Connaught, Inc. which is in its possession (as some appears to be), it would be more efficient to either have defendants produce it or for plaintiffs to travel to Connaught's location to view the documents in place instead of requiring plaintiffs to ferret out those same records and documents from various locations all over the country. The difficulty lies however, in determining which documents are discoverable and which documents are shielded from discovery as either ordinary work product or attorney opinion work product. Defendant appears to be arguing that *all* documents in its possession are immune from discovery because the documents retained by them have been specifically targeted for retention, and others were discarded.

In all events, having concluded that the documents, writings and pleadings that plaintiffs seek meet the relevancy test of FRCvP 26, and acknowledging that attorney opinion work product enjoys a nearly absolute immunity, the question remains as to how the court can verify that what a

party claims is attorney opinion work product is, indeed, what he claims it is. To put it another way, must the court accept, without inquiry, investigation or verification, the defendant's word that documents, records and other writings are, or contain, attorney opinion work product? To ask the question is to answer it.

■ An obvious solution is to examine some or all of the disputed materials, *in camera.* The court is not yet ready to do that, however it is plain that *in propria causa memo judex* (no one can be a judge in his own cause). The court may require a party asserting the work product doctrine ("ordinary" or "attorney opinion") to make a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure. *Nature's Share, Inc. v. Kutter Products, Inc.,* No. 88–1035, slip op. at 3 (D.Kan. Nov. 9, 1988); *State of Colorado ex rel. Woodard v. Schmidt–Tiago Construction Co.,* 108 F.R.D. 731, 734 (D.Colo. 1985); *Jackson Jordan, Inc. v. Kyle Railways, Inc.,* No. 87–1059, slip op. at 4 (D.Kan. Mar. 22, 1988), and *Turner & Boisseau, Chartered v. Marshall Adjusting Corp., et al.,* No. 86–6000, slip op. at 13 (D.Kan. Jan., 1990).

■ It should be noted that plaintiffs have not requested the *entire* litigation files from these cases, but have limited their request to five types of records/documents, namely (1) interrogatories and responses; (2) request for production and responses; (3) requests for admissions and responses; (4) deposition of employees or prior employees; and (5) transcripts of court testimony of employees or prior employees. As to whatever records, pleadings or documents in their possession defendants claim are protected from discovery under the ordinary work product doctrine or the attorney opinion work product doctrine, it should prepare a detailed index of those writings. The index, at a minimum, should contain the following information:

(1) the jurisdiction, and case caption (including case no.);

(2) the type of document (i.e. interrogatories, response to interrogatories, etc.—see plaintiffs' Request for Production listed on page 3);

(3) a specific description of the document, pleading or writing;

(4) date prepared, or notated;

(5) date of document (if different from (4);

(6) who prepared or made notations (if any) on the document;

(7) to whom, and for whom, the document was directed and/or prepared;

(8) purpose of preparing the document—or making notations on it (if any);

(9) number of pages of each document or pleading;

(10) who received copies of any notated or highlighted documents or records;

(11) basis for withholding from discovery ordinary (work product, attorney opinion work product, or other basis);

(12) which documents and records defendants state are already in plaintiffs' counsel's possession from prior cases;

(13) the name, state, jurisdiction and name of plaintiffs' counsel in those cases defendants state have already been provided to plaintiffs' counsel in this case;

(14) any other relevant information necessary to enable opposing counsel and/or the court to determine whether each particular document, pleading or record meets the criteria of the attorney work product bar, either "ordinary" or "attorney opinion", or other basis for protection from disclosure.

A copy of the index should be furnished promptly to court and opposing counsel, so court and counsel can be made aware of specifically what is in issue. *John Morrell and Company v. Rural Water District No. 3, et al.,* 84–1519–C (D.Kan. March 1989) (Wooley, Mag.) and *Turner & Bois-*

*seau, Chartered v. Marshall Adjusting Corporation, et al., supra.*

## II. PHYSICIAN SIDE EFFECT RE-PORTS (PSERs):

█ Plaintiff requested, in paragraph 8 of his request, the following from Connaught:

Copies of all PSER (Physician's Side Effect Reports); adverse reaction reports, drug experience reports, letters, correspondence, memoranda or other items of any nature whatsoever relating to alleged possible reactions to Connaught Laboratories, Inc.'s DPT vaccine from 1978 to date.

Plaintiffs argue that one of the critical elements of their case is whether or not Connaught, Inc. had a duty to warn that the DPT vaccine would cause the type of severe injuries suffered by Christopher. Plaintiffs contend that, in order to demonstrate that Connaught, Inc. failed in its duty to warn, plaintiff must show that it knew, or had reason to know, of the dangers in the use of its vaccine. Plaintiffs state that the PSERs and ARRs are highly relevant to the issue of knowledge of the danger. Plaintiff also argues that the extent of Connaught's knowledge also goes to the element of its duty to warn. Likewise, plaintiffs argue, PSERs and ARRs are also important in establishing the causation element of the case.

Plaintiffs also contend that PSERs and ARRs subsequent to the time of injury are relevant because they may be admissible to prove the existence of a particular condition or defect, to show that plaintiff's injury was caused by the defective product and/or to rebut defendant's causation theory.

The defendants argue that they have already supplied plaintiffs with PSERs/ARRs requested on specific bulk/lot numbers, totalling 258 pages, but that now plaintiffs seeks to obtain *all* PSERs covering a 12 year period, from 1978 to date. Connaught admits it had notice of adverse reactions allegedly related to its DPT vaccine prior to 1984 (when Christopher was vaccinated), but Connaught reasons that plaintiffs must have believed a specific

bulk/lot number was relevant to their claim, even though, through interrogatories plaintiffs stated they did not know the specific bulk/lot number of the vaccine administered to Christopher. Connaught therefore contends that plaintiffs' request for *all* PSERs now, spanning a twelve year period, is excessive and unduly burdensome. Connaught also argues that the plaintiffs have failed to establish that PSERs after 1984 must be produced.

The test to be applied to the request for the production of PSERs is, again, relevancy and burdensomeness. Burdensomeness must be measured against the relevancy factor. C. Wright and A. Miller, 8 *Federal Practice & Procedure*, § 2214, *supra*. This action is against a manufacturer of a vaccine which was sold to the public with, apparently, knowledge that there was a respectable body of medical opinion that the product could cause serious medical reaction or injury. Plaintiffs allege that the vaccine could have been designed safer, by the use of a "fractionalized" instead of a "whole cell" vaccine. In order for plaintiff to prove his case, he is required to demonstrate that the manufacturer knew of the defect in design, failed to adequately research and test the product, and failed to accurately warn of possible adverse reactions.

In *Graham v. Wyeth Laboratories*, 666 F.Supp. 1483 (D.C.Kan.1987), the court held that a manufacturer of whole cell DPT vaccine is not subject to the unavoidably unsafe exception to strict liability (comment k of Restatement Second of Torts § 402A) as a matter of law, but the manufacturer must show that the design was as safe as the best available research and testing permitted. Similarly, in *Morris v. Parke, Davis & Co.*, 667 F.Supp. 1332 (C.D.Cal.1987), a manufacturer of DPT vaccine was not shielded by comment k from strict liability where the vaccine was not accompanied by proper warnings.

It is not for defendants' counsel to try to distill plaintiffs' strategic and tactical use of the documents requested. Connaught has not indicated how many documents

would be involved, nor the exact nature of the burden placed upon them in gathering this information.

Therefore, in harmony with the liberal policy of rules pertaining to discovery of relevant material (*see Rich v. Martin Marietta Corp*, supra and Rule 26(b)(3)), and in light of the fact that the documents sought appear relevant to plaintiffs' case, and may likely lead to admissible evidence, the court concludes that defendant has failed to demonstrate that the production of the PSERs/ARRs is unduly burdensome. The court does not now intend to exclude the possibility of shifting the burden to plaintiffs by having plaintiffs' counsel examine the PSERs in place in defendants' offices, however the content of the briefs presently before the court in response to the instant motion have not convinced the court that Connaught, Inc. has met its obligation of showing the burden upon it to produce the PSERs is "undue". Plaintiffs, in either event, should pay the reasonable costs of reproduction.

The finds that plaintiff' Motion to Compel should be granted in part and that the court should defer ruling on the balance thereof until it is furnished with specific and detailed information sufficient to enable it to rule on the balance.

IT IS THEREFORE ORDERED that defendant, Connaught, Inc., shall produce true copies of the requested PSERs/ARRs on or before March 12, 1991, or, depending upon a prompt showing, in writing, by defendant that the reports are too voluminous to be efficiently and conveniently copied and delivered to plaintiff's counsel, make said reports immediately available in the offices of defendant or its counsel for inspection and examination by plaintiff's counsel.

IT IS FURTHER ORDERED that defendant shall prepare and submit to the court and plaintiff's counsel, on or before March 22, 1991, a detailed index, as above described, of the records, documents, pleadings and writings, generated in prior litigation against defendant, presently in Connaught, Inc.'s offices or otherwise under its immediate control and possession.

IT IS FURTHERED ORDERED that plaintiff's motion is denied as to the requested documents, pleadings, records and writings contained solely in the case files of former cases filed in various locations across the country, however plaintiff is free, of course, at his expense, to examine and copy whatever portion of those case files are open to the general public.

IT IS, BY THE COURT, SO ORDERED.