**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1892
_____

UNITED STATES OF AMERICA

v.

ROBERT BRACE; ROBERT BRACE FARMS;
ROBERT BRACE & SONS INC.,
                                        Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1:17-cv-00006)
District Judge: Barbara Jacobs Rothstein
_____

Argued: March 23, 2021

Before: HARDIMAN, GREENAWAY, JR., and BIBAS,
*Circuit Judges*.

(Filed: June 11, 2021)
_____

Matthew L. Wolford                    [ARGUED]
WOLFORD LAW FIRM
638 West Sixth Street
Erie, PA 16507

    *Counsel for Appellants*

Ellen J. Durkee                       [ARGUED]
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT & NATURAL RESOURCES DIVISION
601 D Street, N.W.
Room 2731
Washington, DC 20044

Laura S. Irwin
U.S. ATTORNEY'S OFFICE
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

    *Counsel for Appellee*

————————————

OPINION OF THE COURT

————————————

BIBAS, *Circuit Judge*.

Litigants flout court rules at their peril. District courts have broad discretion to punish them by striking their briefs if needed. We will not upset these sanctions lightly.

The U.S. Government sued Robert Brace and his farm for violating the Clean Water Act. Brace's then-lawyer persistently violated court rules—even after the court repeatedly

2

ordered Brace to show cause, warned him, and threatened sanctions. After prolonged discovery, the Government moved for summary judgment. But Brace's lawyer responded to the Government's motion late. When the court gave him another chance, he again violated the rules. At last, the court struck Brace's brief, treated the motion as unopposed, and granted summary judgment for the Government. Because that severe sanction was not an abuse of discretion, we will affirm.

## I. BACKGROUND

### A. Robert Brace repeatedly clears and drains wetlands, triggering suits

Robert Brace is a farmer. He owns hundreds of acres in Erie County, Pennsylvania. Decades ago, he bought a parcel of pasture that included thirty acres of wetlands, cleared it, and drained it to grow crops. The Government ordered him to stop mowing the site, yet he kept doing it. So it sued him under the Clean Water Act and prevailed. Brace had dug up dirt, rocks, and the like in the wetlands and redeposited them without a permit. That, we held, violated the Act. *United States v. Brace*, 41 F.3d 117, 120–22, 127–28 (3d Cir. 1994).

This was only the beginning. In 2012, Brace expanded his farm, buying a neighboring parcel from the Marsh family. The Marsh Site adjoins Elk Creek, a tributary of Lake Erie, and includes about fourteen acres of wetlands. About a month later, two Government officials visited and advised him to get a wetlands delineation on the Marsh Site. He did not. Instead, Brace and his sons cleared and drained the wetlands. They used a bulldozer to clear vegetation, an excavator to dig out stumps, a

track hoe to dig ditches, and a tile plow to install a tile drain. They dumped (sidecast) the dirt, rocks, and the like back into the wetlands. Brace did not have a permit for any of that. Soon, the Government discovered this. So it sued him again under the Act, seeking civil penalties and an injunction. This suit is about only the Marsh Site.

### B. Brace's then-lawyer repeatedly flouts rules, ignores deadlines, and tests the District Court's patience

"What followed the initiation of this action is a procedural history replete with extended deadlines, missed deadlines, and completely ignored deadlines—all by Defendant[s' counsel]." *United States v. Brace*, 2019 WL 3778394, at \*2 (W.D. Pa. Aug. 12, 2019). Brace's lawyer's misdeeds started small, but snowballed. We commend the District Court for staying patient in the face of appalling, unlawyerly behavior.

1. *Perfunctory pleading*. First, Brace's counsel pleaded his defenses without any detail. His answer listed eleven affirmative defenses, each in an unlabeled, one-sentence paragraph. The Government moved to strike eight of them as too vague. The District Court struck all eight, noting that the "one-sentence paragraphs contain no particularities at all" and are so vague that they "cannot be expected to put the United States on notice." *Id.* (quoting Supp. App. 18).

2. *Discovery recalcitrance*. Next, Brace failed to cooperate on discovery. Rule 26 requires parties to meet and confer to create a plan for turning over electronic data. Fed. R. Civ. P. 26(f)(2), (f)(3)(C). Yet Brace's lawyer was evasive and slow to answer emails and tried to smuggle in "superfluous

4

information and inappropriate discovery requests." 2019 WL 3778394, at *2. The Government had to move for and get a discovery order.

3. *Pattern of extending and missing deadlines*. Then, Brace's lawyer started missing deadlines even after they had been extended. After eight months of fact and expert discovery, he moved for more time to finish those tasks. Over the Government's objection, the District Court gave Brace several more weeks.

The extended deadline came and went. A week passed. Then another. Followed by one more. Not until three-plus weeks after the extended deadline did Brace's counsel ask for yet another extension, seeking four more *months* to prepare an expert report. Over the Government's objection, the District Court gave him two more months. But it warned Brace that this was it: if he did not give the Government the expert report promptly, the court would bar him from using it at trial.

Even so, Brace's counsel filed the report ten days late, with no explanation or request for more time. Though the District Court ordered Brace to show cause, it relented and let the report in.

Brace's former lawyer then missed more deadlines. A few months later, he asked for and got more time to file dispositive and *Daubert* motions. But he waited until the day *after* the extended deadline passed to file two motions in limine. Again, he did not acknowledge or explain his lateness. When the Government moved to strike, Brace's lawyer explained that the motions were late "because local counsel refused to submit

motions that exceeded the Court's page limitation." App. 18. He also claimed that he was a solo practitioner. (He was not.) Even so, the District Court declined to strike the motions. But it did strongly criticize Brace's pattern of lateness and again ordered him to show cause.

As for Brace's *Daubert* motions, both trickled in about two months after the extended deadline. The District Court summarily struck both as untimely.

4. *Overlength briefs smuggling in extra-record materials*. Meanwhile, the Government had moved for partial judgment on the pleadings, and Brace opposed it. But his opposition relied on evidence not in the record and on factual allegations not in his amended answer. Disregarding that information, the District Court granted the motion. It struck Brace's affirmative defenses, holding that he again had not adequately pleaded them.

The Government later moved for summary judgment. Brace responded a day late. His opposition ran more than 9000 pages long, lacked an appendix, and included thousands of duplicative pages. The Government moved to strike his brief plus thirty-three of his exhibits. In Brace's brief, his counsel referred to many materials that the court had already stricken. And he had not produced those exhibits in discovery. One of the exhibits was a 248-page expert report, dated four months after the close of discovery, that the court had explicitly excluded.

The District Court struck all thirty-three challenged exhibits because he had not produced them in discovery. It also struck the opposition. Yet again, it chose leniency, letting

Brace refile. But it warned him not to file or rely on new materials, or else they would be "summarily stricken." 2019 WL 3778394, at *5.

Brace's renewed filing was timely but massive. Though he cut the appendix in half, it was still thousands of pages long. His responsive statement of facts was "122 pages and in a font with frustratingly inconsistent spacing." *Id.* at *6. His brief was eight pages over the forty-page limit. Though Brace's counsel admitted that in a footnote, he asserted that the Government "has not demonstrated how it has been incurably prejudiced" by his overlength brief. *Id.* at *8 (quoting Brace's brief). The Government moved to strike.

### C. The District Court strikes Brace's brief and grants summary judgment for the Government

At long last, the District Court had had enough: it struck Brace's opposition to summary judgment. Though the court thought it had the inherent authority to strike the brief as a sanction, it also analyzed that sanction under the *Poulis* factors—factors that a court must consider before dismissing a case as a sanction. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). Either way, it found the sanction fitting. Left with no opposition, it then spent thirty-five pages assessing the Government's motion for summary judgment. The court granted summary judgment for the Government on liability, holding that Brace had violated the Act.

But the District Court's work was not yet done. It had bifurcated liability from remedies and still needed to set a penalty. To aid its decision, the court ordered Brace to submit a

proposed deed restriction and restoration plan. It also ordered both parties to provide status reports. And it said that to set the penalty, it would first need to assess Brace's good faith in repairing the land.

Before that could happen, Brace filed this appeal.

## II. WE HAVE JURISDICTION OVER PART OF THIS INTERLOCUTORY APPEAL, BUT NOT ALL

On appeal, Brace challenges the District Court's order to propose a deed restriction and restoration plan. We have jurisdiction to review that injunction. He also challenges the grant of partial judgment on the pleadings; the summary-judgment order; and the striking of his brief opposing summary judgment, his thirty-three exhibits, and his *Daubert* motions. We have jurisdiction to review the first three of these, but not the last two.

### A. We can review the injunction

There is no final judgment yet. Under the final-judgment rule, we ordinarily lack jurisdiction over appeals before judgment. *See* 28 U.S.C. § 1291. But we can always review nonfinal district-court orders that grant an injunction: an order directed to a party, other than a temporary restraining order, that gives some of the substantive relief sought and is enforceable by contempt. *In re Pressman-Gutman Co.*, 459 F.3d 383, 392 (3d Cir. 2006); § 1292(a)(1).

When the District Court ordered Brace to submit a proposed deed restriction and mitigation plan, it issued an appealable injunction. That order set both the nature and extent of the

relief that the court will ultimately grant: Brace must restore the wetlands that he tore up. All the parties have left to do is to propose *how* to implement that relief. Thus, as the parties agree, we can review it. *See Hoots v. Pennsylvania*, 587 F.2d 1340, 1350 (3d Cir. 1978).

### B. Our pendent jurisdiction extends to the summary-judgment order, the striking of Brace's brief, and the grant of partial judgment on the pleadings

Any further interlocutory jurisdiction must be pendent. Pendent appellate jurisdiction gives us discretion to review orders if they either (1) are "inextricably intertwined" with appealable ones or (2) must be reviewed with them to "ensure meaningful review." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 130 (3d Cir. 2018) (internal quotation marks omitted). Even then, we use pendent jurisdiction sparingly: review must be necessary, and we may use our discretion to decide what to reach. *Id.*

We will exercise pendent appellate jurisdiction over the summary-judgment order. It is "inextricably intertwined" with the injunction, which flows from the order. Thus, we will review both the striking of Brace's summary-judgment brief and its grant of partial judgment on the pleadings. The District Court treated the summary-judgment motion as uncontested only because it had stricken his brief. And in that order, the court set aside Brace's four remaining affirmative defenses; it rejected two for independent reasons and the other two as resolved by the grant of partial judgment on the pleadings. To review the appealable injunction thoroughly, we must review

these actions as well. The District Court's analysis cannot stand if one of them falls.

### C. **We will not extend our pendent jurisdiction to the orders striking the thirty-three exhibits and the *Daubert* motions**

But we do not need to review the striking of Brace's exhibits or *Daubert* motions. Though in theory both could matter to our review, pendent jurisdiction requires more than an abstract link. Because we need not consider either one to review the injunction, we will not.

### III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY STRIKING BRACE'S BRIEF

Though Brace asks us to review the injunction, he does not attack the *substance* of the injunction or even the grant of summary judgment. Instead, he challenges only the District Court's *procedure* in getting there—specifically, its order striking his summary-judgment brief. We review that sanction for abuse of discretion. *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 237 (3d Cir. 2007). And here, the District Court's sanction was eminently reasonable.

### A. *Poulis* generally

We start with a word on *Poulis*. The District Court thought it had the inherent authority to strike the brief as a sanction. But it recognized that we typically require district courts to analyze the *Poulis* factors before imposing sanctions of dismissal or default judgment or their functional equivalent. *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013). So just in case,

it analyzed the sanction under our *Poulis* factors too. There are six:

1. How much the party is *personally* responsible for the challenged actions;

2. How much those actions *prejudiced* the opposing party;

3. The *history* of dilatoriness;

4. Whether the party or its lawyer acted *willfully* or in *bad faith*;

5. How effective *alternative sanctions* less than dismissal would be; and

6. Whether the party has a *meritorious* claim or defense.

*Poulis*, 747 F.2d at 868. The court should consider all six factors but need not find all six to award sanctions. We have not yet required a *Poulis* analysis for the sanction that the District Court imposed here. An unopposed summary-judgment motion is not tantamount to a default judgment, because the court still must find for itself that there is no genuine dispute of material fact and that the movant deserves judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990). And because factors five and six are geared towards dismissals, they do not map neatly onto striking a brief.

At a minimum, we urge district courts to consider the relevant factors, to aid our review. This ensures that they assess important issues and explain their thoughts clearly, on the record. Here, the District Court's thoughtful *Poulis* analysis confirms that it did not abuse its discretion.

11

## B. The District Court did not abuse its discretion

Though the District Court's *Poulis* analysis was largely right, it was not perfect. On the sixth factor, for instance, it looked to the merits of the Government's summary-judgment motion, not Brace's brief. Though a misstep on a *Poulis* factor will typically give us pause, the rest of the District Court's analysis shows that it did not abuse its discretion.

The first factor, the party's personal responsibility, was neutral. Even though "it stretches credulity [to believe that Brace had] no idea how counsel [wa]s conducting this case," the court gave Brace the benefit of the doubt and set that factor aside. 2019 WL 3778394, at *9 n.9. That is fine; not all the *Poulis* factors need be satisfied. *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). But as a rule, future courts should gauge a party's knowledge before dismissing the case, entering a default judgment, or the like.

The other four *Poulis* factors strongly support the District Court's sanction. On the second one, prejudice is clear. Brace's former lawyer's misconduct forced the Government to waste time and money "deciphering incomprehensible pleadings, scouring through noncompliant briefs, and moving again and again for compliance … all to no avail." 2019 WL 3778394, at *10. And Brace concedes factor three, the history of dilatoriness.

On factor four, the District Court reasonably found that Brace's former lawyer had acted in bad faith. Indeed, it is hard to classify counsel's repeated flouting of court rules as anything else. The court saw this misbehavior firsthand, and we

defer strongly to its judgment. *See NHL v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642–43 (1976) (per curiam).

And on the fifth factor, alternative sanctions, the District Court noted that its repeated orders to show cause, warnings, and threats of sanctions had not deterred counsel's chronic misbehavior. To be sure, it often makes sense to consider or impose other escalating sanctions first, like fines. But even if we might have done things a bit differently, this judgment call was hardly an abuse of discretion.

Overall, striking Brace's brief was severe but reasonable. The District Court saw the action live and was admirably patient. Especially given the astounding misbehavior here, we trust its judgment that the punishment fit the wrongs.

### IV. BRACE FORFEITED HIS REMAINING ARGUMENTS

That leaves Brace's claim that the District Court erred by granting partial judgment on the pleadings. He does not challenge the merits of that decision. Instead, he argues only that the Government's motion was really under Rule 12(f), not 12(c), and that the *Ashcroft v. Iqbal* standard does not apply to judgment on the pleadings. 556 U.S. 662 (2009). But Brace forfeited these arguments below. The Government's brief below set forth the Rule 12(c) standard and argued for the *Iqbal* standard. Yet Brace's lengthy opposition brief did not challenge either one. Brace acknowledges this forfeiture but asks us to overlook it. We decline his invitation. Brace could have developed this argument in his response to the Government's brief but did not. He offers no compelling reason to overlook the forfeiture, so we will not. *See Barna v. Bd. of Sch. Dirs. of*

13

*Panther Valley Sch. Dist.*, 877 F.3d 136, 146–47 (3d Cir. 2017).

\* \* \* \* \*

District courts have broad discretion to impose proportional sanctions. When they explain how they weigh the *Poulis* factors, we can confirm the reasonableness of those sanctions. Though striking Brace's summary-judgment brief was harsh, it was a reasonable response to his former counsel's persistent, extreme misconduct. We will affirm.