**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1828
_____

In re: BYJU'S ALPHA, INC.,
Debtor

BYJU'S ALPHA, INC.

v.

CAMSHAFT CAPITAL FUND, LP; CAMSHAFT CAPITAL ADVISORS, LLC;
CAMSHAFT CAPITAL MANAGEMENT, LLC; RIJU RAVINDRAN;
INSPILEARN LLC; and THINK AND LEARN PRIVATE LIMITED

CAMSHAFT CAPITAL FUND, LP;
CAMSHAFT CAPITAL ADVISORS, LLC;
CAMSHAFT CAPITAL MANAGMENT,
LLC; and WILLIAM MORTON,
Appellants

GLAS TRUST COMPANY LLC
Intervenor-Appellee

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Nos. 1:24-cv-00358 and 1:24-cv-00492)
District Judge: Hon. Maryellen Noreika

_____

Submitted Under Third Circuit LAR 34.1(a)
June 9, 2026

Before: HARDIMAN, BOVE, and FISHER, *Circuit Judges*.

(Filed:   June 12, 2026)

OPINION[*]

HARDIMAN, *Circuit Judge*.

Camshaft Capital Fund, LP, Camshaft Capital Advisors, LLC, Camshaft Capital Management, LLC (collectively, the Camshaft Entities), and the Fund's sole officer, William Morton, appeal the District Court's order upholding a contempt order in a bankruptcy proceeding. Unpersuaded by any of Appellants' arguments, we will affirm for substantially the reasons provided in the District Court's thorough opinion.

I

BYJU's Alpha, Inc. (Alpha), a special purpose vehicle and subsidiary of Indian conglomerate Think and Learn Private Limited, along with its related entities, defaulted on a $1.2 billion loan. A few weeks later, Alpha's sole director, Riju Ravindran, initiated a series of monetary transfers totaling over $533 million to the Camshaft Fund in exchange for an ownership interest. The assets were later transferred to Inspilearn LLC, another subsidiary of Think and Learn.

After Alpha defaulted on the loan, the lenders exercised contractual rights to take control of that entity and oust Ravindran. Alpha, under new management, soon learned about the allegedly fraudulent transfers. It then filed for Chapter 11 protection and initiated this adversary proceeding against the Camshaft Entities to recover the $533

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

million in the Bankruptcy Court for the District of Delaware.

At the heart of the bankruptcy proceedings was "[t]he location and control of the $533 million." *In re BYJU's Alpha, Inc.*, 661 B.R. 109, 114 (Bankr. D. Del. 2024). The Bankruptcy Court doubted the legitimacy of the Camshaft Fund for at least two reasons. First, the address it provided to the U.S. Securities and Exchange Commission was an International House of Pancakes in Miami. *Id.* Second, "[t]he evidence suggest[ed] that Mr. Morton" was "Camshaft's sole employee." *Id.* at 115.

The Bankruptcy Court issued an order granting Alpha's motion for expedited discovery, "which required [the Camshaft Entities] to respond to [Alpha's] interrogatories" about the location of the missing half-a-billion dollars. *Id.* The Camshaft Entities and Morton failed to comply. *Id.* A little less than two weeks later, on March 1, the Court ordered them "to provide the requested information by the end of the day or return to the courtroom [three days later] for a status conference to discuss why [the Court] should not issue an order to show cause as to why [they] should not be held in contempt." *Id.* The Court also instructed the Camshaft Entities' counsel "to inform Mr. Morton" that his "presence in the courtroom was expressly requested" if there was a status conference. *Id.* When the Camshaft Entities again failed to "provide the requested information," the Court held a status conference on March 4, as promised. *Id.*

By the time of the status conference, the Camshaft Entities had not produced the documents or information requested. *Id.* And Morton failed to appear. *Id.* at 116. Counsel claimed that Morton was "overseas" and "not able to make it." *Id.* But counsel acknowledged that he had "advised Mr. Morton that he should produce the documents, he

3

should produce the information, [but] he declined." *Id.* at 115. So the Court issued a show cause order, instructing the Camshaft Entities and Morton to explain why they should not be held in contempt. *Id.* at 116. The Court also warned that it would "consider all possible sanctions against Camshaft and Mr. Morton, including placing Mr. Morton in civil confinement." *Id.*

The afternoon before the show cause hearing, counsel told the Court that Morton could not attend in person because he had "recently been hospitalized" and "remain[ed] overseas," but he wished to attend virtually. *Id.* Pursuant to its policy requiring good cause for virtual appearances, the Bankruptcy Court requested, among other things, proof of hospitalization. *Id.* None was timely provided. *Id.* So the Bankruptcy Court held the Camshaft Entities and Morton in contempt. *Id.* at 118. It ordered Morton's civil confinement and the Camshaft Entities and Morton to each remit $10,000 for each day they remained in contempt. *Id.*

After the Bankruptcy Court entered its contempt order, the Camshaft Entities and Morton appealed to the District Court. As relevant here, the District Court held that the Camshaft Entities could not immediately appeal the contempt order because they were parties to the ongoing bankruptcy matter. *In re Byju's Alpha, Inc.*, 2025 WL 947725, at *1 (D. Del. Mar. 28, 2025). It also held that the order was not an abuse of discretion. *Id.* The Camshaft Entities and Morton then filed this appeal.

4

II[1]

The District Court exercised jurisdiction under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 158(d)(1) as to Morton, a non-party to the adversary proceeding below. But there are two jurisdictional wrinkles.

First, we lack jurisdiction over the appeal as to the Camshaft Entities because, as parties to the bankruptcy proceeding, the civil contempt order against them was interlocutory. *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 636 (3d Cir. 1982) (en banc); *see also DeMasi v. Weiss*, 669 F.2d 114, 122–23 (3d Cir. 1982). The Camshaft Entities seem to accept this general rule but, to maneuver around it, argue that the contempt order was functionally criminal rather than civil, so it was immediately appealable. But "a valid order of civil contempt does not become punitive simply because the contemnor persists in punishing himself." *United States v. Harris*, 582 F.3d 512, 520 (3d Cir. 2009). Here, the Bankruptcy Court imposed sanctions to coerce the Camshaft Entities and Morton to comply with its discovery orders, not to punish them for past behavior. True, months later, after Appellants finally complied (and long after they had appealed the contempt order), the Court declined to "use [its] equitable power . . . to remit" the already-accrued fines, noting their contempt of Court for a period of several months. App. 1189. But the Court's statements, taken in context, were merely an explanation for why the Court did not find it appropriate to relieve Appellants of the

---

[1] Our review of a contempt order is for abuse of discretion. *In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999); *see also Harris v. City of Philadelphia*, 47 F.3d 1311, 1321 (3d Cir. 1995). But we review legal questions, such as whether the district court had jurisdiction, de novo. *In re Caterbone*, 640 F.3d 108, 111 (3d Cir. 2011).

burden they had accrued through their three-month defiance of court orders. Those statements were not reasons for imposing the contempt order in the first place.

As a last-ditch effort, the Camshaft Entities say we have jurisdiction over their appeal because it is "exactly the same" as Morton's. Appellants Br. 37. Though we recognize that the appeals share the same factual basis—*i.e.*, the Camshaft Entities and Morton were held in contempt by the same order for the same reasons—we have never held that parties can take an immediate appeal simply because a non-party to the same proceeding can independently do so.

Second, we have no jurisdiction over the Bankruptcy Court's June 11 order denying Appellants' motion to remit accrued fines. The Camshaft Entities and Morton never noticed an appeal of that order. So, as the District Court recognized, it had no jurisdiction over it. Neither do we.[2]

### III

Having established jurisdiction only over the March 14 contempt order as it relates to Morton, we address each of his remaining arguments in turn. First, he contends that,

---

[2] Appellants resist this conclusion by urging us to exercise pendent jurisdiction over the June 11 order. That "sparingly" invoked doctrine generally applies to non-appealable orders that are "'inextricably intertwined' with appealable ones" or "must [nevertheless] be reviewed . . . to 'ensure meaningful review.'" *United States v. Brace*, 1 F.4th 137, 142 (3d Cir. 2021) (citation omitted). Even assuming the doctrine of pendent jurisdiction applies to appealable orders that an appellant simply fails to appeal from (which was the case for the June 11 order as to Morton), we decline to exercise our discretion to correct Appellants' oversight. The orders are not inextricably intertwined nor is review of the June 11 order necessary to meaningfully review the March 14 order. To the extent Appellants express concerns about judicial economy, we agree with Appellees that "efficiency would have been served here if [Appellants] had simply noticed an appeal of the [June 11] Remit Order." Appellees Br. 45.

because the Bankruptcy Court did not allow him to attend the hearing remotely, he was denied due process. We disagree. The District Court stated it well:

> Despite his knowledge of the Bankruptcy Court's valid order requiring him to produce documents, three warnings that he would be held in civil contempt if he did not produce the documents, and two different opportunities to appear before the Bankruptcy Court to explain his non-compliance, Mr. Morton nevertheless "refused" to appear on March 14 or comply with the discovery order.

*In re Byju's Alpha, Inc.*, 2025 WL 947725, at *8.

A party cannot refuse to comply with a discovery order, decline to attend hearings (even when ordered by the Court to do so), provide a last-minute excuse for failing to appear with no documentation supporting good cause for a remote appearance, and then claim due process violations when held in contempt. Our review of the record confirms that Morton was "granted [a hearing] at a meaningful time and in a meaningful manner" consistent with due process. *Roe v. Operation Rescue*, 920 F.2d 213, 217 (3d Cir. 1990). Accordingly, as the District Court correctly concluded, the Bankruptcy Court did not deprive Morton of due process by adhering to its own reasonable rules requiring him to show good cause before participating remotely.

Next, Morton argues that the Bankruptcy Court "did not hold an evidentiary hearing or support its findings with any evidence before issuing the Contempt Order." Appellants Br. 27. But as the District Court observed, "[t]he show cause hearing *was* the evidentiary hearing—Mr. Morton simply chose not to appear [in person] despite being ordered to do so." *In re Byju's Alpha, Inc.*, 2025 WL 947725, at *10.

Finally, Morton contends that the Bankruptcy Court imposed the "harshest

7

sanctions" rather than "consider[ing] the least coercive sanctions necessary." Appellants Br. 31. We disagree. Morton repeatedly refused to comply with a discovery order relating to the missing $533 million and even told the Court that he had no intention of complying. Especially after multiple warnings, the Court was well within its discretion to impose sanctions of this magnitude. We agree with Appellees that "the fact that other courts determined they were able to 'coerce compliance'" with lesser fines under different circumstances "does not mean" *this* Bankruptcy Court abused its discretion in the face of Appellants' blatant defiance of discovery orders with assets of this magnitude at stake. Appellees Br. 40. In our view, the Bankruptcy Court acted well within its "wide discretion" in imposing these proportionate sanctions under the circumstances. *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994) (citation omitted).

*      *      *

For the stated reasons, we will affirm.